# CASES

## ARGUED AND DETERMINED

IN THE

## UNITED STATES CIRCUIT COURTS OF APPEALS AND THE DISTRICT COURTS

---

### KENNEDY v. NATIONAL TUBE CO.

(Circuit Court of Appeals, Third Circuit. January 16, 1919.)

### No. 2412.

1. BROKERS ⊜82(4)—COMPENSATION—ACTIONS—ISSUES AND PROOF.

Where, in an action on a contract for commissions on a sale, plaintiff declared on an express contract, he must prove the contract declared on in order to recover.

2. CONTRACTS ⊜176(1)—JURY—CONSTRUCTION.

Where the terms of an oral contract are established without conflict of evidence, its interpretation, as in the case of written contracts, is a question of law for the court; but where the evidence is conflicting, or the meaning doubtful, the question of the interpretation of the contract should be submitted to the jury.

3. CONTRACTS ⊜29—JURY—EXISTENCE OF CONTRACT.

Where plaintiff declared on an express contract, and the evidence would not have sustained a finding that there was such contract, the court need not submit the matter to the jury, but may direct verdict for defendant.

4. BROKERS ⊜86(1)—COMMISSIONS—CONTRACT TO PAY—EVIDENCE.

In an action for commissions on a sale, where plaintiff informed defendant of a concern that had for sale material which defendant wanted to buy, evidence *held* insufficient to establish an express contract on the part of defendant to pay plaintiff for his service.

5. BROKERS ⊜40—SERVICES—COMPENSATION.

Where plaintiff informed defendant of a concern from which it could purchase material it wanted to buy, such service, though requiring little effort on plaintiff's part, will support an agreement by defendant to compensate plaintiff.

In Error to the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

Action by Joseph W. Kennedy against the National Tube Company. There was a judgment for defendant, and plaintiff brings error. Affirmed.

Arthur O. Fording, of Pittsburgh, Pa., for plaintiff in error.

George E. Shaw, Reed, Smith, Shaw & Beal, and John G. Frazer, all of Pittsburgh, Pa., for defendant in error.

Before BUFFINGTON and WOOLLEY, Circuit Judges.

---

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

255 F.—1

WOOLLEY, Circuit Judge. This is not an action on a contract for commissions on a sale. It is an action brought by the plaintiff, on an alleged oral contract, to recover compensation for informing the defendant of a concern that had for sale material which the defendant wanted to buy.

[1] The contract declared on is an express contract, not an implied contract. To succeed, either in the trial court or in this court, the plaintiff must show that the evidence proves the contract declared on.

Negotiations were conducted by Kennedy, the plaintiff, and Lynch, the purchasing agent of the defendant. They were embraced in one or two very brief and informal conversations, the substance of which is disclosed in the testimony of the plaintiff alone.

At a casual meeting, Kennedy asked Lynch if his company would be interested in purchasing 20,000 tons of steel ingots. Lynch replied that it would be very much interested, and asked Kennedy to get him a quotation. Kennedy told Lynch that "the approximate price of the ingots would be $61.50," saying:

"If you buy them, I want a dollar a ton, which will make it cost you approximately—this price will have to be checked—it will make it $62.50 a ton."

After some discussion as to Kennedy's compensation for bringing about a transaction of this size, Lynch told Kennedy to "go on and get (me) a quotation." Neither then nor later did Kennedy undertake to get a quotation, but he said to Lynch:

"I will put the people in touch with you, so you can get the thing closed up."

Kennedy then gave Lynch the name of Edgewater Steel Company as the proposed vendor and communicated to that company the name of the defendant. The two concerns were thus brought together. On this introduction, they made a contract for the sale and purchase of 20,000 tons of ingots. Kennedy had no part in making this contract.

The defendant refused to compensate the plaintiff for his service in bringing the contracting parties together; whereupon the plaintiff brought this action. The trial court entered a compulsory non-suit, without opinion; and the plaintiff sued out this writ of error.

The question in the case is, whether there was a contract between the plaintiff and defendant. This question turns, however, on one of two others, first, whether the minds of the acting parties ever met; and, if so, second, whether one of them—the defendant's purchasing agent—acted within either the actual or apparent scope of his authority in making a contract that would bind his principal, where something different from the purchase of materials was involved.

While the question, whether the agent's undertaking in behalf of his principal was within the scope of his authority as agent, was certainly in the case if it appeared that, but for the single question of his authority, the parties had entered into a valid contract, it seems to us, that the principal question—and, indeed, the first question—for decision is, whether there was in fact a contract between the parties, test-

ed by the meeting of their minds. We think a decision on this ques-tion will dispense with the consideration of the other.

At the argument, counsel for the plaintiff regarded the question of the existence of a contract in two aspects: First, that there was a con-tract and that the court should have so found; and second, if the court entertained a doubt as to the existence of a contract, that doubt should have been submitted to the jury as a question of fact and should have been left with them to be solved.

[2, 3] We are not unmindful of the general rule, that where the terms of an oral contract are established without conflict of evidence, its interpretation, as in the case of written contracts, is a question of law for the court; and also, where the evidence as to the terms of an oral contract is conflicting, or the meaning doubtful, because of the ambiguous nature of words used or because of obscure references to unexplained circumstances, the jury are allowed—in fact, are re-quired—under proper instructions, to ascertain the intention of the parties and determine what was the contract. Cases cited in 6 R. C. L. § 249; 9 Cyc. 592. But here we are not concerned with conflicting terms of a contract or with a doubtful meaning arising from ambiguity of terms or obscurity of references; we are concerned with the ques-tion whether there was a contract at all, as shown by the plaintiff's testimony alone, and, whether, accordingly, there was any evidence on which either the court or the jury could have found a contract such as is contemplated by the law in the meeting of minds of the parties. If the evidence was such as would not have sustained a finding by the jury that there was a contract, then, very certainly, the trial court com-mitted no error in declining to submit to the jury the question wheth-er there was a contract. We must inquire, therefore, whether the evidence is such, that, had it been submitted to the jury, it would have sustained a finding by the jury that a contract had in fact been en-tered into by the parties.

[4, 5] What is the evidence? It is clear that Kennedy expected compensation for bringing the vendor and vendee "in touch," and that Lynch, the defendant's purchasing agent, also expected Kennedy to be compensated for that service. But how and from whom did Ken-nedy and Lynch agree that the contemplated compensation should be paid? Was it to be included in the price and to be paid by the ven-dor? The vendor said it was not. Was it to be excluded from the price and to be paid by the vendee? The vendee (the defendant) said it was not. What did Kennedy say? So far as we can find after a careful search of the very brief record, he said nothing. He did not leave it uncertain that he expected compensation; he made it very clear before he revealed the name of the vendor what he expected, but he did not say from whom he expected it, whether from the vendor or the vendee. He left this most material feature of the proposed con-tract to inference, and it may be as readily inferred that his compen-sation was to be included in the price and to be paid by the vendor as that it was to be excluded from the price and to be paid by the vendee. This is the substance of the negotiations which Kennedy put in evi-dence as proof of the contract.

After the sale had been made, Kennedy inquired about his compensation. Even then he seemed uncertain as to which of the parties—whether the vendor or vendee—was to pay for his service in bringing them together. He demanded payment from neither. He went to Lynch, however, and said to him, that he "understood that he (Lynch) had purchased the ingots," and upon being told that he had, he inquired of him: "Did you arrange to take care of me as per our understanding?" Lynch replied that "Mr. Bell (president of the vendor) had agreed to do that." To this statement, Kennedy took no exception and made no comment. Later, when Bell, Lynch and Kennedy were together, Bell denied agreeing to any such thing. Then followed a discussion between Lynch and Bell as to whether Kennedy's compensation was included in the price and to be paid by the vendor—with Kennedy sitting by and remaining silent, so far as the record shows. There followed also a discussion between Lynch and Kennedy concerning the ethics of Kennedy demanding payment from the defendant in view of his business relations with the vendor.

At these discussions, it does not appear that Kennedy asserted a claim that the defendant had promised to pay him nor does it appear that he then demanded payment from the defendant. Kennedy's demand and the defendant's refusal followed later.

We thus have a situation, disclosed by the plaintiff's own testimony, in which the vendor said that Kennedy's compensation was not included in the selling price and therefore it was not liable for its payment; the vendee said that the compensation was included in the price and therefore it was not due from the defendant; and Kennedy himself said nothing. Instead of showing an understanding between the parties, even assuming that the purchasing agent of the defendant was acting with full authority from his principal, the evidence shows a misunderstanding between them, and, therefore, fails to show a meeting of their minds on a most material part of the proposed contract. Utley v. Donaldson, 94 U. S. 29, 24 L. Ed. 54; First National Bank v. Hall, 101 U. S. 43, 25 L. Ed. 822; La Compania Bilbaina de Navegacion de Bilbao, App. v. Spanish American Light & Power Co., Consolidated, 146 U. S. 483, 13 Sup. Ct. 143, 36 L. Ed. 1054.

The service that Kennedy rendered, though requiring little effort on his part, was not inconsiderable when considered with reference to war conditions under which the concern that wanted steel was brought in touch with the concern that had steel for ready sale. This service was undoubtedly a valid consideration for a promise to pay for it. But Kennedy fell between the vendor and vendee in failing to get such a promise from either one or the other. While the defendant doubtless profited by Kennedy's service (as also did the vendor), this suit was brought not in indebitatus assumpsit, but on the defendant's express promise to pay. In the absence of evidence of such a promise, no finding by the jury that the defendant had made such a promise, if the case had been submitted, could have been sustained.

The question of the authority of the defendant's purchasing agent to make a contract of the kind here declared on ceases to be an issue

in the case when no such contract is found to have been entered into. Being of opinion that the non-suit was properly entered, we direct that

The judgment below be affirmed.