NELLIE FORBES, Claimant, Appellee, v. OTTUMWA SAND COMPANY, Appellant; SOUTHERN SURETY COMPANY, Defendant.

No. 42020.

JUNE 20, 1933.

Smith & Work, for appellant.

John T. Clarkson and Theodore B. Perry, for appellee.

EVANS, J.—The husband of the plaintiff lost his life while engaged in the service of the defendant and while in the course of his employment on January 28, 1931. The defendant is a corporation, which has been engaged for many years in its present line of work. Its articles of incorporation define the scope of its enterprise as the acquiring and selling of "sand, stone and ice and all other kinds of property". It operates upon the banks of the Des Moines river in the vicinity of Ottumwa. It collects annually large quantities of sand and gravel by the use of dredges; and by grading and classifying, prepares the same for sale to contractors and builders. In the winter time it collects, sells, and delivers to various customers large quantities of ice which it cuts and collects from the Des Moines river. The decedent, William Forbes, had been one of its employees for many years, in both lines of work. On January 28, 1931, he was engaged in cutting ice for the defendant and was drowned while so engaged. The defendant concedes its liability for compensation in some amount. It is agreed that the average wage of the decedent was $4.50 per day. On the face of the statute therefore the claimant would be entitled to recover as a weekly payment 60 per cent of the average weekly earnings of the decedent not to exceed, however, $15 per week, for a period of 300 weeks. Such was the amount allowed by the Industrial Commissioner. The contention of the defendant at this point is that the claimant is entitled to $15 per week only for a period of 200 weeks. This contention is predicated upon subdivision 6 of section 1397, which provides as follows:

"6. For employees in a business or enterprise which customarily shuts down and ceases operation during a season of each year, the number of working days which it is the custom of such business or enterprise to operate each year instead of three hundred shall be the basis for computing the annual earnings; but the minimum number of days which shall be used as a basis for the year's work shall not be less than two hundred."

The defendant contends that its enterprise "shuts down and ceases operation during a season of each year" and that therefore it is entitled to the benefit of the reduction provided for in the foregoing section. This indicates the issue of fact, which was tried before the commissioner and upon which the finding of the commissioner was adverse to the defendant.

It appears for the defendant that the dredging operations must necessarily stop about the 1st of December, when freezing weather sets in and renders the use of the dredge impracticable. Conversely the ice harvest cannot be gathered in the summer time. It must wait for the winter to mature its crop. The ice cutting season lasts for an average of 11 days in the winter time. The ice is all shipped to the customers as fast as it is gathered. The defendant operates no icehouse. It sells its ice in advance and then fills its orders. It is undeniably true that there is a part of every winter when the defendant neither dredges sand nor gathers ice. The fact remains under the evidence that the plant does not shut down at any season. It is in continuous operation from one end of the year to the other. Collecting sand and gravel from the river banks by the use of dredges comprises only a part of the sand and gravel business. The marketing and delivering of the stocks of sand constitute a vital and continuous part of the enterprise. It is true that the company operated in the winter time with a much reduced force. Its employees in the winter time were few except in connection with the ice harvest. The decedent, William Forbes, was not one of the employees whose employment was continued throughout the winter. It is upon this fact that the defendant bases its claim that the employment of Forbes was seasonal and that it did not exceed 200 days in the year. But the period of plaintiff's employment is not the criterion laid down in the statute. This exceptional provision of the statute above quoted is made applicable only in a case where the enterprise itself "shuts down" for a season. The defendant's enterprise is not such. Such was the finding of the Industrial Commissioner. It was affirmed by the district court.

We hold that the finding was a proper one.

II. The defendant challenges the power of the Industrial Commissioner to make the order appealed from. This challenge was not made before the commissioner. The facts upon which this challenge is based are briefly: On July 3, 1931, the defendant filed with the commissioner a memorandum of agreement between it and the claim-

ant, which provided that the compensation should be $10.38 per week for 300 weeks. On July 14, the commissioner, by his deputy, noted approval thereon. It appears that up to this point the claimant had acted without aid of counsel. Four days later counsel for the claimant filed with the commissioner an application to reopen the case on the ground that such order was in violation of the terms of the statute. To such application the defendant appeared. The substance of its resistance was stated as follows:

"Further answering said application, these respondents state that on or about February 16, 1931, a memorandum of agreement of settlement was entered into by and between them and the claimant herein whereby they agreed to pay to her the sum of $8.73 per week for 300 weeks on account of the death of said Forbes, which sum was later increased to $10.38 per week, which latter sum they have paid and are paying to claimant; that $10.38 per week for 300 weeks is the true and correct legal amount to which claimant is entitled under and by virtue of the law of the State of Iowa known as the Compensation Law; that since February 16, 1931, claimant has been paid by these respondents the full sum of $10.38 per week on account of the death of said William Forbes."

The terms of the settlement first approved on July 14th by the commissioner were on their face violative of the terms of the statute. Code section 1415 provides:

"No employee or dependent to whom this chapter applies, shall have power to waive any of the provisions of this chapter in regard to the amount of compensation which may be payable to such employee or dependent hereunder."

Section 1378 provides:

"No contract, rule, regulation, or device whatsoever shall operate to relieve the employer, in whole or in part, from any liability created by this chapter except as herein provided."

We have held in substance that the Industrial Commissioner has not the power to approve a waiver by the claimant of any of the statutory provisions in her favor. Comingore v. Shenandoah Artificial Ice, etc., Company, 208 Iowa 430, 226 N. W. 124. In as much as the memorandum of settlement was invalid on its face, it would seem to follow that the order of approval by the commissioner was equally

so. The logical result of such a situation would be to regard the case as still pending before the commissioner and undisposed of by him. As already indicated, it was so treated by all the parties in the final hearing before the commissioner. The jurisdiction of the commissioner is limited and purely statutory. An invalid order could not operate as a bar to a valid one. The final order entered by the commissioner did no more than to correct the invalid one.

The judgment of the district court is accordingly affirmed.

KINDIG, C. J., and ALBERT, DONEGAN, CLAUSSEN, and STEVENS, JJ., concur.