(October Term, 1942)

# HORVATH v. SHERIDAN-WYOMING COAL CO. ET AL.

(No. 2221; November 24, 1942; 131 Pac. (2d) 315)

For the plaintiff and appellant, there were briefs by *R. G. Diefenderfer* and *John F. Raper* of Sheridan, and oral argument by *Mr. Diefenderfer.*

214

For the defendants and respondents there was a brief and oral argument by *R. E. McNally* of Sheridan.

*John F. Raper* and *R. G. Diefenderfer* in reply.

RINER, Chief Justice.

The question to be disposed of by our decision in this litigation is whether there shall be upheld an order of the district court of Crook County granting a new trial in an action upon an alleged contract which it is claimed was made in connection with a Workmen's Compensation proceeding. The appellate procedure is that permissible under one of the provisions of the direct appeal law of this state, viz., Section 89-4910, W. R. S. 1931.

The plaintiff and appellant, Louis Horvath, will be usually subsequently referred to herein as the "plaintiff", the "employee" or by his surname. The defendant and respondent Sheridan-Wyoming Coal Company, a corporation, may be appropriately mentioned hereinafter as the "Company", the "employer" or as the "corporate defendant". The defendant and respondent Kessinger may properly be designated as the "manager" or by his own surname.

The facts material to be considered as we read the

record may fairly be stated to be substantially as follows:

Louis Horvath was injured on December 4, 1937, while in the employ of the Company at Acme, Wyoming. Injury suffered and the manner in which it was incurred are very well outlined in the final order of award made in the compensation case phase of this litigation by the district court of Sheridan County as follows:

"While operating cutting machine in coal mine a slab of coal slipped off face of pillar, causing laceration of scalp, fracture of right fibula, and injury to muscles of right shoulder. Has been compensated for temporary total disability to and including March 10, 1938, at which time he endeavored to work, but the injury to his shoulder prevented him from so doing. Is entitled to compensation for temporary total disability March 28th to June 1st, both inclusive, 66 Days at $60.00 month."

The employee resumed work June 2, 1938, at first as a watchman at the Acme mine of the Company. Thereafter, when that mine closed down April 1, 1940, he was placed at work by his employer in aiding in the dismantling of this mine. It appears that he was injured also on April 14, 1940, due to his falling off a bench while engaged in taking down some wires. For this injury he received an award under the Workmen's Compensation Law, amounting to $41.02. He was employed thereafter in this dismantling work, at digging up mine track and at other jobs connected with that task, this type of employment ceasing about October 22, 1940.

There were about one hundred fifty men employed at the Acme mine by the Company when it closed down and nearly one hundred were transferred to the Monarch mine owned by the same employer. These men were selected within their several classifications at a conference had between the Company and the Miners'

Union officials. The remainder, or about fifty men, were left at Acme for the purpose of continuing the dismantling work. When that task was finally concluded these workmen, of whom Horvath was one, were left without employment.

May 1, 1939, Horvath made application to the Wyoming Unemployment Compensation Commission, and stated in his application that he was "unemployed, able to work, available for work", and that he had "been registered for work".

The plaintiff asserts that he was permanently injured on account of the accident experienced by him on December 4, 1937, and the theory upon which the plaintiff's side of the cause below was tried appears to be that he was reemployed by the Company on June 2 or 3, 1938, under an oral contract made between himself and the defendant Kessinger, on behalf of the Company, whereby the latter agreed to give him (Horvath) steady employment during the remainder of his life at such light work as he might be able to perform and at living wages.

The consideration for this agreement was asserted to be that due to the promises thus claimed to have been made on behalf of the Company to Horvath, the latter agreed to and did "forego and abandon his right to Workmen's Compensation allowances arising from the injuries received by him while employed by the Company in its Acme mine on December 4, 1937," more specifically that Horvath was induced by these promises made on behalf of the Company to allow the two years period to elapse during which a modification of the amount of the award on account of the asserted increase of incapacity due to the injury suffered by the employee December 4, 1937, could be had, as provided by the concluding part of Section 124-113 W. R. S.,

1931, as amended by Section 4 of Chapter 128, Laws of Wyoming, 1937, which reads:

"Where an award of compensation has been made in favor of an injured employe, an application may be made to the court by either party any time within two years from the date of the award, or at any time during which monthly payments under an award are being made, for a modification of the amount of the award on the ground of increase or decrease of incapacity due solely to the injury, or upon the ground of mistake or fraud."

Horvath asserts in his petition filed in the cause that this contract was made on behalf of the Company by its general manager Kessinger and general superintendent C. M. Shott. However, at the conclusion of the plaintiff's case and before the defendants had introduced any evidence plaintiff dismissed his alleged claim against Superintendent Shott on the ground that the evidence which the employee had presented to the court wholly failed "to warrant the inclusion of" Shott as a defendant in the case. Shott who was originally made a party defendant named in plaintiff's petition became, therefore, no longer connected with the litigation.

Both the Company and Kessinger in their pleadings denied that any such contract had ever been made. The testimony of the parties as to this alleged agreement was: that of Horvath to the effect that Kessinger came in his car on June 2 or 3, 1938, to see the employee and "he promised me an easy job, lifetime, and to forget the compensation"; that Horvath then told Kessinger he would go and see Dr. Anton, the physician employed by the Miners' Union to care for its members when ill or injured; that Dr. Anton called up the pit boss, Welsh, and Welsh hired Horvath as a watchman, as above stated; the testimony of Mrs. Horvath that she heard this conversation between her husband and Kessinger that "Mr. Kessinger says 'Louis, you ain't going to get no more treatments and no more compensation, you

better go to work. The company promises you an easy job as long as you live at good living wages. Just go to work and forget about the compensation.'"; and that after seeing Dr. Anton Horvath went to work.

J. T. Kessinger testified for the defendants that he was the secretary of the Company by election and he was general manager of the Company in title only; that Mr. Pape, as the Company's president, was the only one who had authority to compromise Workmen's Compensation cases involving miners' injuries; that he (Kessinger) ordinarily handles Workmen's Compensation cases; that he never made anything like the arrangement with Horvath which the latter and his wife described in their testimony; that it would be ridiculous to make any such offer. On cross-examination he stated that he had the title of general manager without the authority; that he (Kessinger) had no authority to "hire and fire" employees of the Company except those connected with his office force; that C. M. Shott, the General Superintendent of the Company and the men under him had that duty.

This case was originally filed and the issues therein made up in the district court of Sheridan County, but was thereafter removed on change of venue to Crook County, where it was tried by the court with a jury in attendance. Upon the conclusion of plaintiff's case the defendants moved for a directed verdict. This was denied by the court, but it was again renewed at the conclusion of all the evidence in the case. This motion was likewise overruled. The trial resulted in a verdict of $6500 in favor of the plaintiff, and judgment was accordingly entered thereon against the defendants severally for $6774.85, including costs accrued.

The record was prepared under the direct appeal method of appellate procedure and specifications of error were duly filed. Upon giving them consideration the court issued its order granting a new trial. That

is the order now drawn in question. Among these specifications of error was one to the effect that:

"That the judgment rendered and entered in this cause as aforesaid is not supported by sufficient evidence but that the same is contrary to the evidence, and is contrary to law, and is based upon a verdict obtained contrary to the evidence and contrary to law."

There were other specifications grounded upon the failure of the court to direct a verdict in accord with defendants' several motions mentioned above.

In the consideration and disposition of this cause it is proper we should have before us certain constitutional and statutory law of this state, viz., that part of Article 10, Section 4 of the Wyoming State Constitution as amended in 1914, for the purpose of authorizing the enactment of the Workmen's Compensation law by our State Legislature, this part of the Section referred to reading:

"The right of each employee to compensation from such fund shall be in lieu of and shall take the place of any and all rights of action against any employer contributing as required by law to such fund in favor of any person or persons by reason of any such injuries or death.";

that portion of Section 124-102 W. R. S., 1931, which reiterates the constitutional provisions aforesaid thus:

"The right of each employe to compensation from such funds shall be in lieu of and shall take the place of any and all rights of action against any employer contributing, as required by law, to such fund in favor of any such person or persons by reason of any such injury or death. Sections 23-129, 89-403, and 89-404, and all laws or parts of laws relating to damages for injuries or death from injuries or in anywise in conflict with this chapter are hereby repealed, as to the employments, employers and employes coming within the terms of this chapter.";

all of Section 124-103 W. R. S. 1931, whose language in full is:

"The rights and remedies provided in this chapter for an employe on account of an injury shall be exclusive of all other rights and remedies of such employe, his personal or legal representatives or dependent family at common law or otherwise on account of such injury; and the terms, conditions and provisions of this chapter for the payment of compensation and the amount thereof for injuries sustained or death resulting from such injuries shall be exclusive, compulsory and obligatory upon both employers and employes coming within the provisions hereof.";

and Section 124-110, W. R. S., 1931, reading verbatim:

"No contract, rule, regulation or device whatsoever shall operate to relieve the employer, in whole or in part, from any liability created by this chapter except as herein provided."

In Section 124-104 W. R. S., 1931, as ultimately amended by Section 1 of Chapter 128, Laws of Wyoming, 1937, and intervening amendments "mines" are listed as one of the extra-hazardous occupations to which the Workmen's Compensation law aforesaid is applicable.

We enter upon the review of the order granting a new trial in this case with the guiding legal principle before us which has frequently been announced in our decisions that an order directing a new trial is more reluctantly interfered with on appeal therefrom than a denial thereof, and a much stronger showing is necessary to obtain a reversal where a new trial is granted than where it is denied. This is for the reason perfectly apparent that "the rights of the parties are not finally settled as they are where the new trial is refused". Other reasons readily occur to the thoughtful legal mind. See Wells v. McKenzie, 50 Wyo. 412, 62 P. (2d) 305; Horse Creek Conservation District v. Lincoln Land Company, 54 Wyo. 320, 92 P. (2d) 572, and cases

cited therein; 4 C. J. 832, Section 2813; 5 C. J. S. 522, Section 1619, and extensive list of cases cited in both the texts just mentioned.

It is evident that whatever contract was made, if made, must be predicated upon the testimony of Horvath and that of his wife, which we have set forth above. The first inquiry which suggests itself is the authority of Kessinger to make such an arrangement. His testimony educed by plaintiff on cross-examination was that Kessinger was General Manager in name and not actually; that when Mr. Pape, the President of the Company was absent Kessinger did not assume full responsibility; that if monumental matters developed where there had to be a high authority found and Mr. Pape was away, Kessinger did not act but got in touch with Pape; that after Lee, the former General Manager, was killed, Kessinger held the title; that after Mr. Pape came in August, 1937, he (Pape) decided he would divide it into departments; that Kessinger kept the title of General Manager for certain reasons, but that he did not have the authority; that he had the title without the authority. Mr. Pape testified on direct examination that Horvath never at any time after his injury came to Pape and asserted or claimed that he (Horvath) was entitled to lifetime employment with the Company and that Kessinger had no authority to make any such contract. There does not seem to be any evidence in the record disputing these statements in regard to the question of Kessinger's authority.

Where the evidence is conflicting it follows, of course, that the question of whether or not there was certain authority vested in an official becomes one for the jury. However, when the evidence is uncontradicted the question is for the court to decide. Maxson v. Michigan Central R. Company, 117 Mich. 218, 75 N. W. 459.

Additionally, it may be observed that plaintiff evidently knew that the authority to hire employes abided

in Mr. Shott and the minor officials subordinate to him, for the record discloses that after the alleged conversation of the plaintiff with Kessinger on June 2 or 3, 1938, the plaintiff went to Welsh, the pit boss, who was one of the officials acting under the direction of Mr. Shott, then the General Superintendent in charge of the mining operations of the Company. The record establishes also that plaintiff later went to see Mr. Shott concerning this matter of employment, but Horvath at that time does not seem to have mentioned to the General Superintendent that he (Horvath) had or claimed this alleged contract with the Company. So far as can be told by the record, Horvath did not say anything about the arrangement to Mr. Welsh, the pit boss. In this connection it will be recalled that Shott and the officials under him were the authorized officers who customarily hired the men who worked in the mine. This seems to have been the effect of Mr. Kessinger's testimony and there appears to be no contradiction of it.

But assuming that Kessinger had the usual full general managerial authority, it will be of material assistance here to determine whether such an officer ordinarily has ostensible authority to enter into such a contract as the plaintiff claims was made between him and Kessinger on behalf of the Company on June 2 or 3, 1938.

2 Fletcher Cyclopedia of Private Corporation Law (Perm. Ed.) 634, Sec. 677, says that:

"A general manager has no authority to bind the corporation by a special contract of employment for a long term of years or for life, and he may be without any authority, real or ostensible, to make any contract on behalf of the corporation for a fixed term of employment, or for more than short periods."

19 C. J. S. 554, Section 1048, states that:

"A general or managing agent cannot make a con-

tract of employment for life, even in the case of an injured employee, unless it is customary to do so."

13 Am. Jur. 899, Sec. 937, declares the rule to be that:

"The authority of corporate officers or agents to enter into contracts on behalf of the corporation for permanent employment or employment during the life of the employee is not to be lightly implied."

In Heaman v. E. N. Rowell Co., Inc., 261 N. Y. 229, 185 N. E. 83, the New York Court of Appeals remarked concerning an action to recover damages for an alleged wrongful discharge of plaintiff from the employ of the defendant,

"That a contract for employment for life is authorized by the corporation and based on an adequate consideration, will ordinarily be sustained admits of no dispute. Riefkin v. E. I. Du Pont De Nemours & Co., 53 App. D. C. 311, 290 F. 286; Arentz v. Morse Dry Dock & Repair Co., 249 N. Y. 439, 444, 164 N. E. 342, 62 A. L. R. 231. Alleged contracts of life employment are, however, so unusual as to have been, with rare exceptions, condemned by the courts as unreasonable and unauthorized. The president or other executive officer of a corporation has no authority as such to make a contract that one should remain in the corporate employ for life even under a general power 'to appoint, remove and fix the compensation of employees'. That any board of directors or other persons responsible for the management of a corporation should give such unusual power to an executive officer cannot be implied. Plain language of the managing board, clearly showing that such was the intention of the corporation, coupled with power actually or impliedly vested in the corporation itself, must be found to justify such a hiring."

After citing a number of New York cases Judge Pound, who wrote the opinion in that case, additionally stated that:

"The complaint does not suggest that the board of trustees of the defendant corporation ever authorized

or ratified the contract set forth in the complaint. Plaintiff rests entirely on the affirmative allegation that the contract was made 'through the president'. If the plaintiff proved the facts alleged and nothing more he would fail to establish a cause of action. He would establish an unauthorized contract of hiring, not enforceable against the corporation."

See also Laird v. Michigan Lubricator Co., 153 Mich. 52, 116 N. W. 534.

In Babicora Development Co. v. Edelman, 54 S. W. (2d) 552, the Court of Civil Appeals of Texas held that a superintendent of ranches, who had authority to employ and discharge help as a matter of law, had no implied authority to make a contract for life employment of an injured employee. The court says that:

"The facts here show that Farris was either the general manager or superintendent of appellant's ranches in Mexico and that he employed and discharged the help on such ranches. Are such facts sufficient to raise an issue as to his implied authority to employ appellee for life under the above-quoted rules? We think not. There is nothing in the record to show that the owners of ranches ordinarily give their injured employees employment for life; therefore, the making of this contract was not such an act as was ordinarily intrusted to the managers of ranches, nor was it in the usual course of dealing in the ranching business.

"Neither do we think it can be said that the making of this contract was necessary and proper to be done in order to carry into effect the main authority conferred in Farris. There is no evidence which would have justified an ordinary competent person, familiar with the situation and with the ordinary methods of business, considering the matter in the light of everyday experience, to say without serious hesitation that the making of this contract by Farris formed a natural and ordinary part of the management of appellant's ranches.

"It is true that the record here reflects that Farris had authority to employ the help needed on the ranches of appellant, but the authority to employ embodies only

the right to make contracts of a usual and reasonable sort. 1 Mechem on Agency, Sec. 988."

Where plaintiff claimed and sued upon a breach of an oral contract of employment for his lifetime, allegedly made with one Boylan, an executive officer with power of managerial supervision over the defendant company's Oklahoma business, and the defendants denied this agent's authority with whom plaintiff claimed he had dealt, to make such a contract, in General Paint Corporation v. Kramer, 57 F. (2d) 698, Judge McDermott said:

"Mr. Mechem states the general rules as follows: 'A general manager, put in complete charge of a business in which servants, and the like, are ordinarily employed would have implied authority, within the range of what is reasonable and proper, to employ the necessary help. In doing so, he may make contracts of a usual and reasonable sort, such as for example, the hiring of an employee for a year, or the assumption of the risk of the employee's competency to fill the position.' Mechem on Agency, Sec. 988.

"A contract for life employment is not within this rule; and authority to enter into such unusual and far-reaching contracts cannot lightly be implied. This rule is particularly applicable where the principal is a corporation. Corporation statutes contemplate the right of the stockholders periodically to change the management of the affairs of their corporation, by providing for annual or biennial election of directors. If corporate officers, or corporate directors, could enter into contracts giving persons of their selection employment for life, the power of the stockholders would be largely dissipated. We recognize that there are instances when such contracts are and should be upheld, as, for example, where as an incident to a settlement for personal injuries, it is agreed to employ the injured one in some capacity not involving managerial responsibility. Pierce v. Tennessee Coal Co., 173 U. S. 1, 19 S. Ct. 335, 43 L. Ed. 591; Louisville & N. R. R. Co. v. Cox, 145 Ky. 667, 141 S. W. 389; Penn. Co. v. Dolan, 6 Ind. App. 109, 32 N. E. 802, 51 Am. St. Rep. 289; Jackson v. Ill. Cent. Ry. Co., 76 Miss. 607, 24 So. 874; Usher v. N. Y. Cent.

& H. R. R. Co., 76 App. Div. 422, 78 N. Y. S. 508; Brighton v. Lake Shore & M. S. R. Co., 103 Mich. 420, 61 N. W. 550. There may be other instances where a contract for a term beyond that of the employing officer may be valid, as where the services bargained for are peculiarly necessary to the corporation, and where they cannot be secured except for a stated term. But we have no such situation here, and the general and salutary rule undoubtedly is, that authority to enter into contracts of employment for a term of years or for life is not to be implied from the power of management; and it is a matter of grave doubt whether a board of directors, elected for one year, can expressly authorize contracts that deprive succeeding boards of their statutory powers of management."

Concerning the cases mentioned by Judge McDermott and to which he refers as "instances where such contracts are and should be upheld", we have examined them all, and so far as we can see they do not present the features disclosed in the case at bar. They were instances where settlements of personal injuries were made by corporations which had customarily made contracts of this character or the contracts were formal written agreements made directly with the companies involved. See, also, Jackson v. Illinois Central R. R. Co., 76 Miss. 607, 24 So. 874.

Under these authorities and under the assumption above proposed, the law would appear to be, upon the facts as we find them before us in this record, that Kessinger had no authority to make any such contract with Horvath.

Plaintiff tells us in his brief work that the instant case is one for an alleged breach of contract of employment, the consideration for said contract being an alleged forbearance by Horvath to avail himself of his statutory right to reopen the Workmen's Compensation case originating in the injury incurred by him on December 4, 1937. The statutory right referred to in this claim is that granted by the concluding portion of

Section 124-113, W. R. S., 1931, as amended by subsequent legislative acts, the last amendment being set forth in Section 4 of Chapter 128, Laws of Wyoming, 1937, hereinabove recited. It is urged that Horvath went to work on or about June 2 or 3, 1938, and thereafter took no action under this provision of our Workmen's Compensation law.

Let us in this connection view the factual side of the matter as presented by the testimony of the plaintiff and his wife, the only parties who were present at the time Mr. Kessinger is claimed to have made the contract with Horvath, the breach of which is now asserted. As we have detailed above, as witnesses for the plaintiff, they stated that Kessinger on or about June 2 or 3, 1938, told Horvath that the Company would give him, as plaintiff put it, an "easy job, lifetime, and to forget the compensation", or as Mrs. Horvath testified, "an easy job as long as you live, at good living wages. Just go to work and forget the compensation".

While the terms of this alleged contract may be regarded as indefinite as to what was meant by the terms "easy job" and "good living wages", these words were doubtless rendered definite in their meaning by the class of work and the wages the Company subsequently tendered Horvath and which he accepted. These descriptive words incorporated the promises on behalf of the Company. Counsel for plaintiff claim that the statement that Horvath was to "forget the compensation" was the equivalent of a promise on Horvath's part ,and which the Company expected him to perform, to forbear to move to reopen the compensation case which had developed from the injury to Horvath on December 4, 1937, and for which a final order of award was made by the district court of Sheridan County June 24, 1938, compensating the employee until and including June 1, 1938. Counsel assert, also, that because Horvath did nothing to reopen the preceding

Workmen's Compensation case during the two year period provided by law, as above quoted, he actually did forbear, and, so by giving up the right thereunder, establish a consideration for the alleged contract in litigation at this time. We are inclined to think that such a construction of the language of the alleged contract is to say the least a decidedly strained one. We have not been able to discover in our examination of the record any facts or circumstances which indicated or from which it could be inferred that Horvath, Kessinger or the Company had in mind at the time the alleged contract was made any right as thus claimed. None have been called to our attention as so indicating. The words "forget the compensation", so far as we can tell, would seem to mean that Horvath was not to concern himself with the matter of compensation inasmuch as he was to be taken care of by the Company through an easy job at a living wage. In making this statement we are assuming that the oral contract of June 2 or 3, 1938, was actually as the plaintiff and his wife testified it was.

At any rate the rule seems to be as announced by 13 Corpus Juris 787, upon the authority of many cases selected from numerous jurisdictions of the nation:

"Where the terms of an oral contract are shown without any conflict of evidence, its interpretation, as in the case of written contracts, is a question of law for the court. But where the evidence as to the terms of an oral contract is conflicting, or the meaning doubtful, it is for the jury to ascertain the intention of the parties and to determine what the contract was under proper instructions."

See also 17 C. J. S. 1288; Kennedy v. National Tube Co., 255 Fed. 1; Hammond Coal Co., Inc., v. Lewis, 248 Mass. 499, 143 N. E. 309.

Recurring to what has been already stated above as to the factual side of this matter, the law seems to be

additionally that there must be an agreement to forbear or a request to forbear or circumstances from which an agreement to forbear may be implied. Forbearance alone will not supply a consideration. There must be a meeting of the minds of the parties on the point. While it is true that mere forbearance to exercise a right may be a consideration for a contract, there must be some basis from which it can be deduced that the parties agreed either expressly or by implication that forbearance to exercise a right was a part of their contract. As already stated, we do not find any such circumstances in this regard existing at the time the contract was made. Plaintiff was not claiming the right to reopen the Workmen's Compensation case and both parties, the Company and Horvath, seemed to have regarded that matter as closed by the award covering compensation to June 1, 1938. Nor do we find that there was any request to forbear as we understand the language of the alleged contract and as discussed above. See Shaw v. Philbrick, 129 Me. 259, 151 A. 423, 74 A. L. R. 290, and especially the useful and extended note compiling authorities in 74 A. L. R.

Turning now to the effect upon this alleged contract of the constitutional and statutory provisions of our law as quoted above, we should additionally recall that 13 Corpus Juris 342 states the rule to be:

"But forbearance to do, or a promise to forbear from doing, that which the promisee cannot legally do is no consideration for a promise."

17 C. J. S. 456 is to the same effect. The question then presents itself whether Horvath, assuming that the minds of the parties in their alleged contract as above described, actually met on the matter of Horvath's agreed forbearance to reopen the Workmen's Compensation case, could legally surrender by contract the

right accorded him by statute. (Section 124-113 W. R. S. 1931, as amended and as quoted above.)

As already mentioned the theory of counsel for plaintiff as we understand it appears to be that the alleged contract which is relied upon by Horvath in this lawsuit has as its asserted consideration the yielding up of a right given the employee in connection with an injury compensable only under the Workmen's Compensation law and in no other way. The effect of this alleged contract through its breach, as the evidence of this litigation in the court below disclosed, was to give the employee a cause of action grounded upon such surrender and thereby indirectly to obtain far more compensation than he could under the Workmen's Compensation law of this state quoted above, for the injury itself, assuming total disability could have been proven on the reopening of the Workmen's Compensation case. In this connection we may note as a matter of fact that the record discloses no increased disability on the part of Horvath which would permit him to take advantage of the reopening statute.

However, under the constitutional and statutory provisions of the Workmen's Compensation Law of Wyoming, as quoted above, it is clear that that law may not thus be laid aside by either employer or employee. The language of the act establishes that it is compulsory both as to payment of awards and the amounts thereof. If the employer had induced the employee to enter into a contract whereby the employee was to receive a smaller amount than that provided by the Workmen's Compensation law and upon the contractual consideration urged here, that contract could not stand. Section 124-110, W. R. S. 1931, declares that, "No contract * * shall operate to relieve the employer, in whole or in part, from any liability created" by the act. A number of states of the Union have statutes closely allied in language with Section 124-110. The meaning

of each of them has in general been similarly construed by the decisions of various courts dealing with them. The statutes of Kentucky, Iowa, Virginia, Georgia and Indiana appear to have such statutes and there are doubtless others. The words appearing in our statute, Section 124-110 W. R. S., 1931, "except as herein provided" are supplemented in a number of these commonwealths by provisions to the effect that contracts of compromise of liability under these acts on the part of the employer may be made, but if made they must receive the sanction and approval of the industrial board or other executive agency administering the law, otherwise such contracts are invalid. Our law appears not to possess these features, i. e., the legislature seems to have not added any language allowing compromise of liability on the part of the employer under the Workmen's Compensation Act, evidently deeming it unwise to open the door to an agreed or contractual reduction of the employer's liability through the latter's power over employees. Consequently our law would seem to be broader in its scope than the statutes in the states above mentioned.

It will be profitable to briefly review decisions from the states hereinabove mentioned as they apply the provisions in question in their several jurisdictions.

In Kentucky the laws reads (§ 8a of the Workmen's Compensation Act, § 4889 Kentucky Statutes) :

"No contract or agreement, written or implied, no rule, regulation or other device, shall in any manner operate to relieve any employer in whole or in part of any obligation created by this act, except as herein provided."

In that jurisdiction, through the leading case of Workmen's Compensation Board of Kentucky v. Abbott, 212 Ky. 123, 278 S. W. 533, 47 A. L. R. 789, it was decided,

as stated in the subsequent case of Hatfield v. Billiter & Wiley, 231 Ky. 736, 22 S. W. (2d) 129, that:

"In the recent cases of Workmen's Compensation Board v. Abbott, 212 Ky. 123, 278 S. W. 533, 47 A. L. R. 789; Stewart v. Model Coal Co., 216 Ky. 742, 288 S. W. 696, and Eagle Fluorspar Co. v. LaRue (Ky.) 21 S. W. 2d 1026 (decided November 22, 1929), we held in substance, as stated in the syllabus to the Abbott Case, that: 'Ky. St. § 4889, prohibiting contract to relieve employer of any obligation created by Workmen's Compensation Act, except as therein provided, does not refer to withdrawing provision, section 4959, but refers to obligation about which there were provided conditions under which permissible agreement might be made under sections 4907 and 4931, both of which require consent and approval of Compensation Board, and any agreement between employer and employee to compromise liability for compensation, to be legal, must be approved by Compensation Board.'

"An examination of the opinions in those cases will clearly reveal the fact that such conclusion was not only reached because of our construction and interpretation of certain sections of our compensation Act which are as designated and referred to in those opinions, but also upon the general proposition that the entire scheme, object, and purpose of such statutes was founded upon and in furtherance of a wholesome public policy whereby injured indigent employees and their dependents, if killed, would receive benefits whereby they would be relieved from becoming dependents upon the public bounty. To accomplish that purpose the statute made it a part of the duties of the Compensation Board and vested it with authority and power somewhat analogous to those conferred by law upon trustees, guardians, and similar fiduciaries with reference to their beneficiaries and wards. The Compensation Statute, among other things, specifically points out how and under what circumstances an award of the board may be commuted to a lump sum, and section 4908 of our Statutes, being section 27 of the act, also points out how such lump-sum settlements may be distributed to the beneficiary. Those cases also hold that a lump-sum settlement, arrived at solely between the parties and not consented to or approved by the board

is void, and that such invalidity is not removed by the fact that the agreement is reduced to judgment; the invalidity attaching to the latter the same as it does to the inter partes agreement not consented to nor approved by the board before its adoption by the court as its judgment."

See also Ray v. Black Mountain Corporation, 254 Ky. 800, 72 S. W. (2d) 477; Stearns Coal & Lumber Co. v. Duncan, 271 Ky. 800, 113 S. W. 436.

Interpreting the holding in the Abbott case, supra, as did the later Kentucky cases, the Supreme Court of Utah in Brigham Young University et al. v. Industrial Commission of Utah, 74 Utah 349, 279 P. 889,—though the court last mentioned did not have these later Kentucky decisions to aid it—said that:

"The Abbott Case proceeds on the theory that the basis of workmen's compensation laws rests upon the police power of the state, and largely upon an element of public interest in accidents occurring from industrial conditions, and that the economic loss caused by such accidents should not necessarily fall upon the public, but upon the industry in which the accident occurs; that in administering such policy the state itself, as represented by the commission, is interested; that it is competent for the Legislature to declare that an employer and employe be not permitted to enter into an agreed settlement of claims arising under the act, except upon certain imposed conditions, or to commute an award made by the commission after due submission to it, except upon other imposed conditions; that any agreement violative of the provisions of the act in such respect is void and unenforceable; that an act which either by express terms or by necessary implication prohibits such settlements and denies the freedom of parties, though sui juris, to contract with respect thereto, does not transgress provisions of either the state or the Federal Constitution; and that it was competent for the Legislature to declare that on an appeal from, or on a review of, an order made by the Industrial Commission, or from an order refusing an award, the commission may be made a party, and is entitled to be heard on such appeal or review. Under the Ken-

tucky statute, a right of appeal is given to the district court from an order granting or refusing an award by the board or commission. In the Abbott Case the employer appealed from an award made by the board. Pending the appeal, the employer and the employe settled their controversy and agreed upon an amount to be paid by the employer. The district court, in accordance with such agreement and stipulation, entered a judgment for such amount which was less than that awarded by the board. From that judgment, the board appealed. The appeal was opposed by both the employer and employe. The judgment on appeal was reversed, the Court of Appeals holding that under the Workmen's Compensation Act of that state the settlement was void and unenforceable."

While approving the reasoning in the Abbott case the Utah court declined to follow it for the very good reason that the Utah law was materially different from that in Kentucky.

Concerning the Abbott case, the Supreme Court of Georgia in Tillman v. Moody, 181 Ga. 530, 182 S. E. 906, said:

"The ruling in Board v. Abbott, supra, is in conformity to decisions by courts of last resort in most jurisdictions. A contrary conclusion was reached in Brigham Young University v. Industrial Commission of Utah, 74 Utah, 349, 279 P. 889, 65 A. L. R. 152, but the decision there was based squarely upon statutory provisions materially different from those contained in the Georgia and Kentucky statutes. The Utah court approved the conclusion reached under the Kentucky statute in the Abbott case."

In Department of Industrial Relations v. Travelers' Insurance Co., 177 Ga. 669, 170 S. E. 883, the court, discussing the provisions of the Georgia Workmen's Compensation Act akin to that of the Kentucky statute, supra, remarked:

"Section 7 of the Compensation Act provides, 'That no contract or agreement, written or implied, no rule, regulation or other device, shall in any manner operate

to relieve any employer in whole or in part of any obligation created by this Act, except as herein otherwise expressly provided.' Section 19 declares that no agreement of settlement shall be binding unless approved by the commission; but the commission itself is not clothed with authority to render judgments on contracts, and is therefore without power to foreclose the rights of the employee upon any terms other than those prescribed in the act (see sections 43, 44, 45). We conclude that the superior court had no authority on appeal to render a judgment for a lump sum in full and final settlement of the claim, in pursuance of the agreement of the parties not approved by the department of industrial relations."

The Supreme Court of Arizona, in Doby v. Miami Trust Company, 39 Ariz. 228, 5 P. (2d) 187, had occasion to consider the Abbott case, supra, and stated in the following language:

"The Workmen's Compensation Act of Kentucky (Ky. St. § 4880 et seq.) contained provisions similar in substance to, though differing in form from, those of our act just cited, and the Court of Appeals of that state held that its statute allowed settlements between employer and employee directly when authorized by the commission, but not otherwise. Workmen's Compensation Board v. Abbott, 212 Ky. 123, 278 S. W. 533, 47 A. L. R. 789. We concur in the reasoning of that case, and are of the opinion that, in view of sections 1436 and 1457, supra, an employee may accept compensation directly from his employer so as to bar himself from further proceedings under the act, provided such settlement is approved by the commission, but any not so approved is void."

In Forbes v. Ottumwa Sand Co. et al., 216 Iowa 292, 249 N. W. 399, the Supreme Court of Iowa used this language:

"Section 1378 provides: 'No contract, rule, regulation, or device whatsoever shall operate to relieve the employer, in whole or in part, from any liability created by this chapter except as herein provided.'

"We have held in substance that the Industrial Commission has not the power to approve a waiver by the claimant of any of the statutory provisions in her favor. Comingore v. Shenandoah Artificial Ice, etc. Company, 208 Iowa, 430, 226 N. W. 124. Inasmuch as the memorandum of settlement was invalid on its face, it would seem to follow that the order of approval by the commissioner was equally so."

Iowa seems to have a reciprocal provision forbidding an employee to waive any of the provisions in regard to the amount of the compensation provided for by the Workmen's Compensation law of that state, and the quoted section 1378 does not stand alone. We apprehend, however, that the ruling would have been the same if it did.

See also Corr v. Trustees of Indiana University, 109 Ind. App. 237,34 N. E. (2d) 136.

Supplementing the foregoing authorities we also find 71 C. J. 934 stating that:

"The parties may not by agreement deprive the industrial commission of jurisdiction, nor relieve the employer from liability under the act.",

and also that:

"Unless the statute otherwise provides, the remedies afforded by the Workmen's Compensation Act are exclusive wherever the act by its terms is compulsory." (71 C. J. 1480.)

See also 28 R. C. L. 737, Section 32.

Concerning the right to reopen a Workmen's Compensation award some seven years after it was made, upon a subsequent increase of disability upon the part of the workman being claimed, where the law fixed no limit for such reopening (the Wyoming law fixes a two year limit, as above set forth), and asserting that to allow such a reopening would be to leave the door ajar for fraud to be perpetrated upon the employer, in

Wise Coal & Coke Co. v. Roberts, 157 Va. 782, 161 S. E. 911, the Supreme Court of Appeals argued that:

"The Workmen's Compensation Act (Code 1930, § 1887(1) et seq.) expresses the public policy of this state towards both the employer and the employee, and makes the particular industry liable in the first instance for any and all injuries to employees arising out of and in the course of that employment, and fixes compensation according to the extent of the disability resulting therefrom. No contract, rule, or regulation will relieve, in whole or in part, any employer of this responsibility, if such employment comes within the provisions of the act. The injured employee may sign a release in full, with the consent and approval of the commission, yet, if the degree of disability due to the accident subsequently increases and the claimant files an application so stating, such a release is no bar to recovery. See opinion by Judge Campbell in Old Dominion Land Co. v. Messick, 149 Va. 330, 141 S. E. 132.

"While admitting that the statute fixes no limitations for filing such an application, the court is asked to hold as a matter of law that seven years is an unreasonable time in other words, the court is asked to do what the Legislature has not seen fit to do, i. e. fix a time limit in which an application based on a change in condition must be filed."

However, the court concluded that:

"The award is illegal because there is no reliable evidence showing that the loss of the use of the leg resulted from any accident for which petitioners are liable."

We have already pointed out that in the case at bar the record shows that the employee remained at work and also claimed he was able to work during the entire two year period fixed by the statute (Sec. 124-113 W. R. S., as finally amended by Chapter 128, Sec. 4, Laws of Wyoming, 1937) for reopening the original award in the Workmen's Compensation case, arising out of the injury of December 4, 1937.

All things considered, we are obliged to reach the

conclusion that on the facts shown there could be no forbearance as urged in the case at bar and on the law applicable Horvath could not legally surrender his right to reopen the original Workmen's Compensation award based on the injury of December 4, 1937, aforesaid. It follows necessarily that there was no consideration for the contract in suit. That being so there was certainly no abuse of discretion on the part of the district court in granting a new trial in this case.

Other minor points are raised, but we do not deem it necessary to discuss them entertaining as we do the views above set forth.

The instant case will accordingly be remanded for proceedings not in conflict with what has hereinabove been said, the order granting a new trial being hereby expressly affirmed.

*Remanded and affirmed.*

KIMBALL and BLUME, JJ., concur.