## Ray v. Black Mountain Corporation et al.

(Decided June 8, 1934.)

C. C. TURNER and NAPIER & EBLEN for appellant.
B. M. LEE for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

On December 10, 1928, James Ray, a colored man then 24 years of age, while employed by the Black Mountain Corporation, received an injury to both of his eyes through an explosion in the mines. Later he and the Black Mountain Corporation filed with the Workmen's Compensation Board on form 9 an agreement setting forth the agreed character and extent of his injury, and the amount of compensation to which he was entitled and which was to be paid him in a lump sum. The board on June 10, 1929, approved this agreement. Because of such approval, the agreement under the statute had the same effect as an award of the board. The total amount paid Ray under this agreement was $1,-487.14. In 1930, Ray filed an application with the board to open the settlement. The case was on February 18, 1930, reopened by the board. On June 17, 1930, there was filed with the board another agreed settlement supplemental to that of 1929. This too was embodied in the form known as form 9. The character and extent of the injury, as set out in this agreement, was that Ray had suffered 90 per cent. loss of vision in the left eye and 40 per cent. loss of vision in the right eye. It was

agreed that he was entitled to $3,287.14, subject to the credit of $1,487.14 theretofore paid him, leaving yet due $1,800, which by the agreement was to be paid in a lump sum. This agreement, too, was approved by the board on June 17, 1930. On October 15, 1930, Ray filed the present application to reopen the case alleging grounds and showing that he was totally disabled in that he was blind in one eye and had very little vision in the other, because of which he was industrially blind. The board sustained the motion to reopen the case and docketed it for hearing. Proof was taken by both sides, and, on the conclusion of the evidence, the board on October 18, 1932, rendered judgment in favor of the coal company. An appeal was taken to the Harlan circuit court. The judgment of the board was there affirmed, and Ray appeals.

The board dismissed this last application to reopen the case on the ground that in the opinion of the board there was nothing in the record from which the conclusion could be drawn that any fraud had been perpetrated on Ray or that he had made any mistake, and that as the only ground upon which a case may be reopened is a showing of change of condition, mistake, or fraud, his application would have to be dismissed. Section 4902 of the Statutes reads:

"Upon its own motion or upon the application of any party interested and a showing of change of conditions, mistake or fraud, the board may at any time review any award or order, ending, diminishing or increasing the compensation previously awarded, within the maximum and minimum provided in this act, or change or revoke its previous order, sending immediately to the parties a copy of its subsequent order or award. Review under this section shall be had upon notice to the parties interested and shall not affect the previous order or award as to any sums already paid thereunder."

If the fraud which authorizes the reopening of an award is solely that practiced upon the parties, then the finding of the board was right. The proof was that although Ray is industrially blind as he now claims to be and that he is totally and permanently disabled, yet there has been no change of condition since he filed his former application to reopen this case. There is no proof of any fraud practiced on appellant in the pro-

curement of the second settlement, or any mistake on his part in its making. The settlement was deliberately made. Both the parties were represented by counsel and Ray fully understood it, saying he might not live to get all the monthly payments and preferred to get the $1,800 cash then. But if fraud practiced upon the board by the parties in procuring its approval to an agreed settlement because of a suppression of the true character and extent of the injuries of the injured employee authorizes a reopening of a case, then the finding of the board and the judgment of the circuit court are erroneous. When the first application to reopen the case, after the first settlement had been made, was pending before the board, some proof was taken to establish the true character and extent of the appellant's injuries. But before this proof was completed, and indeed before the coal company introduced any proof on that subject, the taking of the proof was abruptly brought to a close and the parties stipulated in their agreement filed on form 9 the character and extent of Ray's injuries. This stipulation is, in the light of the evidence introduced on the present hearing to reopen this case, untrue. The evidence, without contradiction, now discloses that Ray is totally blind in one eye and with practically no vision in the other, by reason of which he is industrially blind and so permanently totally disabled. The evidence further discloses without contradiction that this condition of Ray existed from the very beginning of his disability. At that time, he was treated by the coal company's physician. This physician was not introduced to contradict the evidence introduced for Ray. So here we have the parties in both settlements making to the board not only an untrue statement of the extent and character of the injuries of the injured employee, but also making the positive assertion found in subdivision 8 of form 9 that the compensation agreed upon "is in an amount not less than is provided for by the Workmen's Compensation Act," which assertion was untrue in fact though true if the statement in the settlement as to the extent and character of Ray's injuries was true. Now it may be admitted that as between individuals where they enter jointly into a fraudulent scheme, neither of them will be entitled to relief as against the other. But it must be remembered that in this Workmen's Compensation Law (Ky. Stats. sec. 4880 et seq.), a great public policy is involved. Not only are the rights of the employer and employee involved, but the public has an in-

terest to protect as well. This public policy which is involved and this interest of the public which is to be protected are thus expressed in the case of Workmen's Compensation Board v. Abbott, 212 Ky. 123, 278 S. W. 533, 537, 47 A. L. R. 789:

"The growth of the country had become such, and its industrial enterprises had so increased, that the number of employees so engaged became so numerous as to form a very large per cent. of the entire population. With the increase of machinery and other dangerous agencies employed in the prosecution of such industrial enterprises, such as dynamite and other explosives, electricity, and other dangerous ones, a great number of accidents to employees occurred daily, and by reason thereof the public lost the productive power of the injured or killed employee, and in many instances the community was also burdened with the task of not only caring for the injured servant if only disabled and not killed, but likewise similarly burdened with the duty to provide and care for his dependents whether he was disabled or killed.

"Prior to the passage of the act the only remedy that the law afforded by which any sort of compensation for such losses might be obtained was through an ordinary action against the employer for the recovery of damages, and no such action could be sustained except where the master was negligent and the servant was not. If there was no negligence of the master, or if there was negligence by the servant, the destruction of productive power to the public as well as the burden, supra, on the community, was a total loss to society without any means of recompense. To remedy the situation, and as a result of thoughtful, painstaking, and humane considerations, the general devised and regulated plan of remuneration contained in compensation acts was substituted for the defective and insufficient remedy theretofore existing, and a means was provided whereby compensation could be had for every accident coming with the provisions of the act, and wherein the employee would not only be protected from delays and the extravagance of attorneys' fees incident to the former remedy by suit, but he and his dependents would receive regulated compensation payable at stated periods so as

to most effectually carry out the purposes of the act in providing periodical payments to meet the continued necessities of the injured employee and his dependents. We, therefore, see that the public policy behind the act is as clearly well defined as that behind statutes limiting the hours of service per day, those regulating the paying of seamen's wages, as well as the wages of employees engaged in mining operations and other similar statutes, both federal and state, all of which have been upheld as constitutional.''

This same thought was thus expressed in the case of Goelitz Co. v. Industrial Board, 278 Ill. 164, 115 N. E. 855, 859:

"The fundamental basis of workmen's compensation laws is that there is a large element of public interest in accidents occurring from modern industrial conditions, and that the economic loss caused by such accidents should not necessarily rest upon the public, but that the industry in which an accident occurred shall pay, in the first instance, for the accident.''

In the Abbott Case, supra, we held that agreements as to compensation entered into between an employer and employee require the consent of the board to be binding upon them. The reason for this was the policy of the act as set out in the above excerpt from the opinion in that case. Emphasis was put in the opinion on section 4889 of the Statutes, part of the compensation act, which reads:

"No contract or agreement, written or implied, no rule, regulation or other device, shall in any manner operate to relieve any employer in whole or in part of any obligation created by this act, except as herein provided.''

Now, if to give binding effect to an agreed settlement the assent of the board is necessary because of the provisions and policy of the act, it should follow that if the assent of the board is procured through any fraud practiced upon it, on a proper showing the assent should be set aside; otherwise, the policy of the act as above set out would be flouted and set at naught. What good would it do to require the assent of the board to an agreed settlement if that assent could be procured by

fraudulent representations made to the board as to the extent and character of the injuries and the amount of compensation which should be paid? To so hold would, in the last analysis, permit the parties to agree upon a settlement without the assent of the board. The assent of the board is required to the end that the full compensation provided by the act shall be paid for the actual injuries received by the employee and that no injustice be done either party or the public. Such being our conclusions, it follows that the board erred in dismissing this application of Ray for a readjustment of the compensation alleged to be due him for the injuries he received in the employ of the appellee, and that the circuit court erred in affirming that award of the board in dismissing such application. The judgment is reversed with instructions to remand the case to the board to determine the exact extent and character of the injuries of the appellant and the compensation due him under the act for such injuries, subject to the credit of the amounts heretofore paid him.

Whole court sitting, except Thomas, J., who was absent.