**HENRY VOGT MACHINE COMPANY and Liberty Mutual Insurance Company, Appellants,**

v.

**Harold E. QUIGGINS, Sr., Special Fund, Workmen's Compensation Board of Kentucky and Commercial Union Assurance Companies, Appellees.**

Court of Appeals of Kentucky.

Sept. 21, 1979.

Rehearing Denied Dec. 21, 1979.

Discretionary Review Denied April 15, 1980.

Kenneth J. Tuggle, Louisville, for appellants.

Nicholas N. King, Louisville, for Harold E. Quiggins, Sr.

Armer H. Mahan, Louisville, for Commercial Union Assurance Companies.

Kenneth E. Hollis, Gen. Counsel, Dept. of Labor, Frankfort, Denis S. Kline, Asst. Counsel, Dept. of Labor, Louisville, for appellees.

Before GANT, HAYES and HOWARD, JJ.

GANT, Judge.

This case is on appeal from Jefferson Circuit Court, which affirmed an award to claimant, Harold E. Quiggins, Sr., by the Workmen's Compensation Board. The Board found Quiggins to be 50% occupationally disabled as a result of hearing loss and vertigo. These disabilities are claimed to be the result of claimant's prolonged exposure to industrial noise. Appellant employer, Henry Vogt Machine Company, asserts such an award is erroneous. Although admitting that some hearing loss has occurred and may be the result of industrial noise exposure, Vogt denies that the vertigo, which causes most of Quiggins' disability, is in any way caused by work-related noise exposure. Vogt bases this denial upon the assertion that it is Meniere's Disease which is the cause of the vertigo and that medical testimony failed to prove that Meniere's Disease is caused by industrial noise. Appellant Vogt also raises issues concerning the law applicable to this claim, the adequacy and timeliness of notice, and the responsibility between its present and former insurance carriers, should liability be found to exist.

This is a case of novel arguments based on relatively unchallenged facts. Claimant worked for Vogt Machine Company for over 30 years. His working environment had an extremely high decibel level due to forging machines, presses, steam hammers, warning sirens and gas-fired furnaces. No

protection from this noise was given the workers until 1973 when ear plugs and ear muffs were issued. Claimant began having trouble with his hearing in the late 1960's and early 1970's. He underwent testing for his hearing difficulties in February of 1973. These tests showed signs of hearing loss at the high tone levels which is common in such hearing loss situations. It was also during this period of time that the vertigo, which is the most significant disabling factor, began to affect claimant. This condition caused sickness, dizzy spells and required claimant to be confined to bed for days at a time.

The medical evidence is extensive and, as is often the case in workmen's compensation litigation, conflicting on the central question, that being whether there is a causal connection between the vertigo and the working environment of the claimant. The Workmen's Compensation Board found claimant to have total occupational disability. It then found that 50% of this occupational disability was causally related to his work. Using KRS 342.730(1)(c)27, the Board declined to use the schedule loss formula for hearing loss set out in KRS 342.-730(2)(a)–(i) for its computation of liability.

■ We affirm the award of the Workmen's Compensation Board, as it is based on substantial evidence. *Pruitt v. Bugg Bros.*, Ky., 547 S.W.2d 123 (1977). Two doctors, Bowles and Richmond, testified that claimant's vertigo was related to his noise exposure. Dr. Bowles testified in his deposition:

Q.121 Are you or are you not satisfied, from a medical standpoint, that the exposure to the constant noise which we referred to before probably brought about Mr. Quiggins' hearing loss and vertigo problems?

A. Yes, I am satisfied that this is the cause.

Dr. Richmond's testimony is not quite as specific on this issue, but is nonetheless supportive of the Board's findings. When asked if the exposure to noise that claimant experienced could cause Meniere's Disease and therefore be the base cause of claimant's vertigo, Dr. Richmond testified,

". . . it's probably a better than average presentation of the sequence of events that it could have been caused by the noise exposure. . . ." Other portions of Dr. Richmond's testimony also support the finding that the vertigo portion of claimant's disability was work related and therefore compensable.

■ This Court notes that the testimony from Dr. Nave and Dr. McMurry strongly opposes the theory that a noisy working environment could cause Meniere's Disease. Their testimony is offered to show that it is this disease, acting alone, which causes the disabling vertigo. We are, however, unable to substitute our assessment for that of the Workmen's Compensation Board as to the relative weight testimony should be afforded.

■ The appellant next contends that the statutory schedule loss formula for hearing loss contained in KRS 342.730(2) is the exclusive method for computing benefits for hearing loss. As was held in *Transport Motor Express v. Finn*, Ky., 574 S.W.2d 277 (1978), these schedule benefits are to be used as a figure below which compensation for a specific injury, regardless of actual monetary loss, shall not fall. They are minimums and the Board may, as it has done here, utilize KRS 342.730(1)(c)27 to arrive at a larger compensation figure.

The procedure in permanent partial disability cases is to first determine the degree of disability as shown by the evidence presented, including wage loss. This figure is used in the computation scheme in Subsection (1)(b) [of KRS 342.-730] to arrive at the amount due the employee. If the schedule loss table is applicable, the amount due under that section is determined. This figure is compared with the figure arrived at by the use of the (1)(b) computation formula. *The employee is entitled to the greater of these two. Transport Motor, supra,* at page 284. (Emphasis ours).

■ Future Board determinations in this area should include a finding utilizing the formula set out in KRS 342.730(2) to aid

reviewing courts in their determination as to exactly what is being compensated. This will insure: (1) that minimum benefits allowable under this schedule loss statute are met; (2) that any other components of the disability will be assigned a percentage figure proportionate to their effect on the claimant; and (3) that in determining who is responsible for payment should both the Special Fund and employer be involved, no imposition of the liability will be unfairly allocated, since under KRS 342.730(2)(b) responsibility for industrial hearing loss rests solely on the employer.

■ The Court would like to note that in using the formula set out in KRS 342.730(2) an adjustment may be necessary to properly match the calibration standards used in the audiometric instruments and those referred to in the statute.

Testimony from the expert witnesses reveals that, in adopting the decibel levels at the three frequencies called for in KRS 342.730(2)(d) and (e), the legislature failed to consider a change in the standard zero point adopted by the hearing profession in 1964. Current audiometers are calibrated to the International Organization for Standardization levels (ISO) instead of the 1951 American Standards Association levels embodied in the guide to state legislation utilized by the statute's draftsmen. This results in a hearing loss calculation approximately 11 decibels greater than that intended by the legislature in this complex area. When fixing compensation guidelines to such a professionally agreed upon standard of measurement, the legislature always runs the risk of having that standard changed without a corresponding correction in the statute. Exactly that has occurred. It is not this Court's function to legislate the change into the statute by judicial pronouncement, yet we feel compelled to note its existence.

■■ We find little merit in the employer's contentions that he did not receive adequate notice or that the statute of limitations bars recovery. Quiggins was employed until October 21, 1975. The claim was filed in May of 1976 which is within the

allowable period for statute of limitation purposes since it is within a year of his last injurious exposure to the noise. *South-East Coal Co. v. Dingus*, Ky., 352 S.W.2d 190 (1961). It should be noted that claimant must wait at least six months from his last exposure before testing for hearing loss, which would seem to toll the limitation statute until that time. As to notice, the same tolling principle would apply, and therefore, even if the claimant's discussion with the industrial relations manager, Paul Cline, about his hearing problem were to be held inadequate, the employer received detailed medical reports setting out the employee's diagnosis, prognosis, and recommended medical treatment in March of 1975. This was sufficient notice. One who continues to work full-time in his position for the same employer is not disabled. *American Radiator & Standard Sanitary Corp. v. Gerth*, Ky., 375 S.W.2d 817 (1964).

■ Finally, Vogt wishes this Court to determine which of its insurance carriers should be responsible for the liability imposed. Vogt used Commercial Union Insurance Company for the majority of the time during which it employed Quiggins. On September 1, 1975, it switched carriers to Liberty Mutual Insurance. Larson's, *Workmen's Compensation Law* § 95.20, states the rule that the carrier who is "on risk" when a disease condition results in disability will be assigned the liability. This rule is used as a corollary to the "last injurious exposure" rule referred to above, and has been used in other states when they were faced with the problem of a prolonged exposure to conditions which result in disability at one moment. In *Russo v. Despatch Shops, Inc.*, 280 App.Div. 1008, 116 N.Y.S.2d 788 (1952), the date of disability determined which carrier was liable for loss of hearing resulting from shop noise. This result was later affirmed in *Lumsden v. Despatch Shops*, 5 A.D.2d 242, 171 N.Y.S.2d 189 (1958). Although this rule may place significant burdens on carriers who have been protecting the employer for a very short time, that result alone will not prevent this Court from adopting it. In *Gregory v. Pea-*

*body Coal Co.*, Ky., 355 S.W.2d 156 (1962), although a miner had been employed at a previous company for 30 years and at the present company for 25 days, the second company's carrier was held solely liable for his pneumoconiosis.

We affirm the award for occupational disability granted to claimant by the Workmen's Compensation Board, as it is supported by substantial evidence and was correctly determined under appropriate statutes.

All concur.