ZURICH AMERICAN INSURANCE COMPANY, Appellant,

v.

JOURNEY OPERATING, LLC; Angela Jeffers, Individually and as Administratrix of the Estate of Patrick Jeffers, Deceased; Susie Bell, Individually and as Administratrix of the Estate of William Bell, Deceased; Myers Completion, Inc.; Honorable Donna H. Terry, Chief Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 2009–SC–000796–WC.

Supreme Court of Kentucky.

Oct. 21, 2010.

A. Stuart Bennett, Jackson Kelly, PLLC, Lexington, KY, Counsel for Appellant, Zurich American Insurance Company.

Barry Lewis, Lewis and Lewis Law Offices, Hazard, KY, Counsel for Appellee, Journey Operating, LLC.

Marcus L. Vanover, Law Offices of Howard O. Mann, PSC, Somerset, KY, Counsel for Appellee, Angela Jeffers, Individually and as Administratrix of the Estate of Patrick Jeffers, Deceased.

Paul F. Henderson, Somerset, KY, Counsel for Appellee, Susie Bell, Individually and as Administratrix of the Estate of William Bell, Deceased.

Kimberly K. Van Der Heiden, Allen, Kopet & Associates, PLLC, Lexington, KY, Counsel for Appellee, Myers Completion, Inc.

## OPINION OF THE COURT

This appeal concerns whether KRS 342.125(1) permits an Administrative Law Judge (ALJ) to reopen a final award in order to prevent an insurer from benefiting from its constructive fraud on the tribunal. If so, the question becomes whether substantial evidence supports the finding of constructive fraud and decision to estop the insurer from denying liability

at reopening. The Court of Appeals reversed a decision of the Workers' Compensation Board, reinstating the ALJ's decision by holding that an ALJ has such authority; that the evidence supports the finding of constructive fraud on the part of Zurich–American Insurance Company (Zurich); and that Zurich must comply with the ALJ's order to continue paying benefits based on its admitted liability under Tennessee law.

Appealing, Zurich asserts that the ALJ lacked jurisdiction to consider the matter at issue as well as the authority to reopen. Zurich also asserts that no evidence supported the finding of constructive fraud. We disagree with both assertions and affirm.

The workers' compensation claims that underlie the present action were considered together. The claimants, Angela Jeffers and Susie Bell, are the widows of Patrick Jeffers and William Bell, both of whom were Tennessee residents employed by Myers Completion, Inc. (Myers). Myers was a Tennessee corporation that maintained oil and gas wells and had no office in Kentucky. The men were killed in Kentucky, in an explosion that occurred while they were servicing a well owned by Journey Operating LLC (Journey). The Uninsured Employers' Fund (UEF) was joined as a party to the claims after the Office of Workers' Claims determined that Myers did not have workers' compensation coverage in Kentucky. Journey was joined as a party with potential up-the-ladder liability at the UEF's request.[1] Kentucky Employers' Mutual Insurance (KEMI) covered Journey's Kentucky workers' compensation liability.

Zurich provided Myers' Tennessee workers' compensation coverage. Having

determined that the widows were entitled to benefits under Tennessee law, Zurich paid the decedents' medical expenses, paid some funeral expenses, and began to issue the widows checks for weekly survivors' benefits under its Tennessee policy. Zurich maintained that the policy did not provide coverage for the widows' Kentucky claims but continued to pay benefits under the Tennessee policy throughout litigation of the claims.

The Benefit Review Conference Memorandum in Mrs. Jeffers' claim lists only "which carrier is responsible for the payment of benefits" as being at issue. Mrs. Jeffers testified that Zurich paid the funeral home $7,500 towards her husband's final expenses and that she received other workers' compensation checks but did not cash them. The Benefit Review Conference Memorandum in Mrs. Bell's claim indicates that Zurich paid $7,500 for her husband's funeral expense and continued to pay Tennessee income benefits of $322.05 per week. The contested issues included: 1.) responsible insurer—whether Zurich had coverage for a Kentucky injury; 2.) coverage under the Act for Zurich and KEMI; and 3.) credit to KEMI for benefits paid by Zurich.

The ALJ determined on February 9, 2007 that the Kentucky Workers' Compensation Act covered the claims. Noting that Zurich admitted liability for benefits afforded by Tennessee law but denied liability for benefits afforded by Kentucky law, the ALJ found that Zurich's policy covered benefits awarded under Tennessee's workers' compensation system but failed to cover those awarded under the Kentucky Act. Noting that the Act requires every employer in Kentucky to

1. KRS 342.610(2) deems a contractor who subcontracts work that is a regular or recurrent part of its business to an uninsured subcontractor to be the employer of the subcontractor's employees and to be liable for their workers' compensation benefits.

compensate employees who are injured;[2] requires employers to insure that liability;[3] and imposes liability on a contractor to compensate the injured employee of an uninsured subcontractor,[4] the ALJ found Journey to be a contractor that was liable for the decedents' injuries because Myers' liability was uninsured in Kentucky. As a consequence, the ALJ ordered Journey to pay the survivors' benefits provided in KRS 342.750(1). Noting, however, that KRS 342.670(2) provides credit for compensation paid under another jurisdiction's workers' compensation law, the ALJ granted Journey credit for the death and income benefits "paid and owing" under the Tennessee policy that Zurich issued to Myers.

Journey filed a petition for reconsideration in each claim, but Zurich did not. Journey's petitions requested the ALJ to specify the amount of weekly credit Journey would receive due to Zurich's payments under Tennessee law. Zurich responded that the petitions were attempts to reargue the merits; that the ALJ interpreted Zurich's policy correctly; and that Zurich could not be compelled to pay Kentucky workers' compensation benefits "in addition to the benefits it had already paid (or had offered to pay) under Tennessee law."

The ALJ denied Journey's petitions. Finding that the credit awarded for benefits "paid and owing" provided "sufficient protection and explanation of Journey's rights and responsibilities," the ALJ noted that "the amount of payments under the Tennessee policy will change and vary with time as the children became emancipated or in the event of remarriage." Neither Myers nor Zurich objected to the latter finding based on a contrary interpretation of their continuing obligations under the Tennessee Workers' Compensation Act. Nor did they appeal the ALJ's decision.

Journey appealed both decisions, asserting that the ALJ erred by failing to find that Zurich's policy provided coverage; that Zurich should be estopped from denying coverage because its agent failed to inform Myers that he needed separate coverage for employees who worked in Kentucky; and that the ALJ erred by failing to specify the amount of weekly credit to which it was entitled due to Zurich's payments under Tennessee law. The Board affirmed the awards on November 8, 2007, finding that the credit protected Journey's rights adequately.

Zurich ceased paying Tennessee benefits when the Board's decision became final. This appeal concerns subsequently-filed motions to reopen in which Journey sought an order requiring Zurich to resume paying weekly income benefits. Relying on *Wheatley v. Bryant Auto Service*[5] as providing the ALJ with authority to reopen on the ground of mistake, Journey asserted that Zurich's conduct affected the credit the ALJ awarded and violated multiple sections of the regulations adopted under the Unfair Settlement Practices Act[6] as well as KRS 342.310. Journey reasoned that it was liable for benefits only because Myers had no Kentucky insurance for its employees; that Zurich not only admitted liability for benefits owed under Tennessee law throughout litigation of the widows' Kentucky claims but also continued to pay

---

**2.** KRS 342.610(1).

**3.** KRS 342.340(1).

**4.** KRS 342.610(2).

**5.** 860 S.W.2d 767 (Ky.1993) (an ALJ may reopen a final award *sua sponte* in order to correct a mistake in applying the law to the facts as found).

**6.** 803 KAR 25:240.

the benefits throughout the litigation; and that the widows' awards granted Journey credit for benefits due and owing under Tennessee law.

Zurich asserted that Journey was not entitled to reopen and relied on Tennessee's election of remedies doctrine as a basis to deny any liability for additional benefits. Zurich argued that its admission of an obligation to pay benefits under Tennessee law during litigation did not oblige it to continue paying benefits "after the widows elected to pursue claims under Kentucky's Workers' Compensation Act and were awarded benefits."

The ALJ rejected Zurich's jurisdictional argument, finding that KRS 342.125 permitted reopening because Journey alleged that Zurich should be estopped from denying liability insofar as it committed constructive fraud in the initial proceeding. The ALJ found that the reopening involved the type of mistake contemplated in *Messer v. Drees*[7] and also involved constructive fraud because Zurich's conduct, though not actually fraudulent, produced the consequences and legal effects of a fraudulent action.[8] Moreover the doctrine of collateral estoppel precluded re-litigation of Zurich's liability for continuing payments under the Tennessee policy because it had a full opportunity to litigate the matter in the initial proceeding.[9]

Finding that Zurich committed constructive fraud and was estopped from denying liability, the ALJ noted that Zurich planned during the initial litigation to terminate benefits based on its interpretation of Tennessee's election of remedies doctrine. Yet, Zurich failed to disclose its plan to the ALJ and represented through its conduct during the initial litigation and

appeal that it would continue to pay benefits under its Tennessee policy. As a consequence, the other parties received no opportunity to address Zurich's plan and the ALJ received no opportunity to consider it when deciding the initial claim.

Having found that Zurich committed constructive fraud in the initial proceeding, the ALJ ordered it to continue making payments under the Tennessee policy and to tender within ten days a statement of the bi-weekly amounts due each plaintiff. The ALJ denied Zurich's motion under KRS 342.310 for costs against Journey and KEMI, finding that no evidence supported the motion. Finally, the ALJ gave Zurich ten days to show cause why it should not be held liable for defending Journey's motion to reopen without reasonable grounds.

Zurich appealed, arguing that the ALJ lacked jurisdiction to decide the matters at issue as well as the authority to reopen. The Board agreed with Zurich and reversed. Journey then sought review in the Court of Appeals.

Noting that KRS 342.325 and KRS 342.125(1) give an ALJ the jurisdiction and authority to reopen upon an allegation of mistake or fraud, Journey argued that Zurich pursued a fraudulent litigation strategy that worked to its own advantage and Journey's detriment. Journey reasoned that the ALJ based the award on Zurich's representations that it owed and was paying survivors' benefits under the Tennessee policy but that Zurich then denied liability after the award became final. Convinced that Chapter 342 permitted reopening under the circumstances and that Zurich committed constructive fraud on the tribunal, the Court of Appeals re-

---

**7.** 382 S.W.2d 209 (Ky.1964).

**8.** *See Kendrick v. Bailey Vault Co., Inc.,* 944 S.W.2d 147 (Ky.App.1997).

**9.** *See* 17 COUCH ON INSURANCE 239:34 (3rd ed.2006).

versed and reinstated the decision rendered at reopening.

Appealing, Zurich continues to assert that the ALJ lacked jurisdiction to decide the matter at issue and that no evidence supported the finding of constructive fraud on the tribunal. We disagree.

## I. JURISDICTION.

Although KRS 342.305 gives a circuit court jurisdiction over matters concerning the enforcement of a final award, KRS 342.325 gives an ALJ jurisdiction over all questions arising under Chapter 342. KRS 342.125(1) permits an ALJ to reopen a final workers' compensation award based upon an allegation of mistake [10] or fraud.[11] KRS 342.125(1)(a) includes an allegation of fraud or constructive fraud on the tribunal.[12]

■ The ALJ recognized properly that the present reopening differed from a simple attempt to enforce a final award and differed from a dispute between insurance carriers over reimbursement for previously-paid benefits, such as occurred in *Custard Ins. Adjusters, Inc. v. Aldridge.*[13] At issue was whether Zurich's conduct during the initial workers' compensation proceeding amounted to a constructive fraud that affected the accuracy and integrity of the ALJ's decision and, thus, estopped Zurich from later denying that it was liable for continued payments under the Tennessee policy.

## II. SUFFICIENCY OF THE EVIDENCE OF CONSTRUCTIVE FRAUD.

■ Zurich asserts that the ALJ erred by applying the doctrine of equitable estoppel to preclude it from terminating benefits paid under Tennessee law because no evidentiary foundation existed for finding that Zurich engaged in constructive fraud. Zurich maintains that it "properly represented that it owed benefits by operation of Tennessee law" during the initial litigation and acted fully within its rights under Tennessee's election of remedies doctrine by terminating payments after the award became final because it owed no additional benefits under the Tennessee policy at that point. Zurich states that the doctrine "completely terminates any obligation to continue paying benefits pursuant to Tennessee law when benefits are awarded in any other jurisdiction" and also states that its "obligation to pay those benefits did not end until the award of benefits in Kentucky became final."

■ Zurich's argument overlooks the fact that these appeals concern the integrity of judgments in claims that were brought under the Kentucky Act. A trial court has the inherent power to determine that its judgments reflect the truth, a power that extends not only to fraud but also to bad faith, abuse of judicial process, deception of the court, and lack of candor to the court.[14] Estoppel is an equitable remedy that courts often invoke to prevent a party from benefiting from its misconduct.[15] The facts and circumstances of a

---

10. KRS 342.125(1)(c).

11. KRS 342.125(1)(a).

12. *See, for example, Crummies Creek Coal Co. v. Hensley,* 284 Ky. 243, 144 S.W.2d 206 (1940); *Ray v. Black Mountain Corporation,* 254 Ky. 800, 72 S.W.2d 477 (1934).

13. 57 S.W.3d 284 (Ky.2001) (ALJ lacked jurisdiction to decide dispute between two carriers over reimbursement of erroneously-paid benefits where dispute did not involve a provision of Chapter 342).

14. *Potter v. Eli Lilly and Co.,* 926 S.W.2d 449, 455 (Ky.1996).

15. *Akers v. Pike County Board of Education,* 171 S.W.3d 740, 743 (Ky.2005).

case determine the propriety of resorting to an equitable remedy.[16] Conduct that works a fraud or constructive fraud on the tribunal and has a detrimental effect on the accuracy and integrity of a judgment warrants such a remedy. The facts and circumstances of the present case support the decision to estop Zurich from denying liability at reopening and order it to continue paying the benefits for which it admitted both liability and coverage throughout the initial proceeding.

The widows filed claims against Myers in Kentucky. Zurich knew that the policy it issued to Myers did not cover Kentucky claims but did cover Tennessee claims. It also knew that Tennessee's election of remedies doctrine would bar such a claim if the widows acted affirmatively to obtain benefits in another state or knowingly and voluntarily accepted benefits under the law of another state.[17]

Acting with that knowledge, Zurich admitted that it was liable for benefits provided by Tennessee law and paid Tennessee benefits voluntarily throughout the litigation. Moreover, it failed to object to either the initial order granting Journey credit for Tennessee benefits paid by Zurich or the order on reconsideration, which indicated clearly that the ALJ construed Zurich's admission of liability for such benefits to mean that it would continue to pay them in the future. Zurich's litigation strategy worked to Journey's detriment (and perhaps the widows') by discouraging the widows from filing Tennessee claims and obtaining a Tennessee judgment against Zurich until such time as the election of remedies doctrine would bar them from doing so. Moreover, it deceived the ALJ.

If allowed to succeed, Zurich's strategy would enable it to avoid paying the bulk of its admitted liability under Tennessee law by rendering worthless most of the credit that Journey received against the widows' awards of income benefits. By misrepresenting its true position throughout the initial litigation, Zurich denied the parties and the ALJ an opportunity to address its plan of action and undermined the integrity of the resulting judgment. Such circumstances warranted an estoppel and an order requiring Zurich to pay the Tennessee benefits that its policy covered and for which it admitted having liability initially.

The decision of the Court of Appeals is affirmed.

All sitting. All concur.

---

**16.** *Patrick v. Christopher East Health Care,* 142 S.W.3d 149 (Ky.2004).

**17.** *Eadie v. Complete Co., Inc.,* 142 S.W.3d 288, 291 (Tenn.2004).