RENDERED: NOVEMBER 8, 2024; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1021-WC

KENTUCKY EMPLOYERS'
MUTUAL INSURANCE                                              APPELLANT


                    PETITION FOR REVIEW OF A DECISION
v.                  OF THE WORKERS' COMPENSATION BOARD
                    ACTION NO. WC-15-01407


ROGER HALL; HONORABLE CHRIS
DAVIS, ADMINISTRATIVE LAW
JUDGE; ENCOVA MUTUAL
INSURANCE GROUP (FORMERLY
BRICKSTREET MUTUAL
INSURANCE COMPANY); LETCHER
COUNTY BOARD OF EDUCATION;
AND WORKERS' COMPENSATION
BOARD                                                         APPELLEES


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: CALDWELL, CETRULO, AND A. JONES, JUDGES.

CETRULO, JUDGE: This is the third appeal to this Court from rulings in a workers' compensation case. The history of those proceedings becomes important in regard to the issues raised herein, even though the issues themselves have changed significantly.

**FACTS AND PROCEDURAL HISTORY**

Roger Hall ("Hall") was a full-time employee at Letcher County High School from 1976 to 2003, and, thereafter, occasionally worked as a substitute teacher until 2014. During that time, Hall regularly used a breakroom in a Letcher County building that, unbeknownst to him, contained asbestos. In September 2015, Hall filed his Form 102 application ("application"), alleging that he developed mesothelioma due to the asbestos exposure. In that initial application, he listed his date of last exposure as "gradual," identified Letcher County Board of Education ("Letcher County") as his employer, and identified Appellant Kentucky Employers' Mutual Insurance ("KEMI") as the school's insurer in 1990. In 2017, Hall amended the application, listing the date of last exposure as approximately April 18, 2014.

In the first proceeding, the Administrative Law Judge ("ALJ") concluded that Hall's mesothelioma was caused by his exposure to asbestos during his course of employment. However, the ALJ determined that Hall's claim was untimely filed, finding that Hall's last injurious exposure to asbestos occurred in

1990. Therefore, his workers' compensation claim was dismissed. The Workers' Compensation Board ("the Board") reversed, based upon testimony that some of the asbestos was not removed until Hall retired in 2003 or sometime thereafter.[1] The Board held that the statute of limitations was satisfied, and that Hall's claims could proceed. Letcher County appealed, and this Court affirmed. On further appeal to the Supreme Court, in *Letcher County Board of Education v. Hall*, 576 S.W.3d 123 (Ky. 2019) ("*Hall 1*"), the Supreme Court agreed the ALJ had erred by finding the claim barred by the statute of limitations. The case was therefore remanded to the ALJ in order to determine if Hall was entitled to workers' compensation benefits. Upon remand, the ALJ considered additional medical evidence and awarded Hall benefits, now concluding that Hall's last exposure to the hazard occurred on April 18, 2014. That award was not entered until April 9, 2020, and determined Hall was totally disabled and entitled to income and medical benefits from the "defendant and/or its insurance carrier."

Following this ruling, Letcher County appealed again, contending now that the Board of Claims had exclusive jurisdiction over Hall's claim as it was a state government agency. First, the Board upheld the ALJ's finding that the Department of Workers' Claims ("Department") had jurisdiction, despite the

---

[1] Hall retired as a full-time teacher in 2003, but he continued to work as a substitute teacher for Letcher County until 2014.

provisions of Kentucky Revised Statute ("KRS") 49.020 establishing the Board of Claims. Then, this Court agreed and found that requiring state employees to bring work-related injury claims in the Board of Claims would defeat the purpose of the Workers' Compensation Act ("the Act").[2] Finally, the Kentucky Supreme Court again agreed and affirmed, noting that the sole issue on this second appeal was whether the Board had jurisdiction to hear Hall's claim. The Court so found and issued that final opinion in June 2023. *See Letcher Cty. Bd. of Educ. v. Hall*, 671 S.W.3d 374 (Ky. 2023) ("*Hall II*").

At this point, we note that the only real parties to all these actions before the ALJ, the Board, and the two appellate courts were Hall and Letcher County. However, in August 2021, while the second appeal was pending before this Court, KEMI filed a motion to intervene in the appeal, and a motion for partial remand. Therein, KEMI explained that it had determined that it did not insure Letcher County on the date of the last exposure, ultimately found in 2020 by the ALJ to be April 18, 2014.[3] KEMI argued that Hall's application had stated the date of last exposure was "gradual." As mentioned, Hall's application had

[2] In this second appeal to this Court, the parties also addressed payment of medical bills and interest issues which were not presented to the Supreme Court nor are they relevant to this third appeal.

[3] Throughout these proceedings, KEMI had been defending Letcher County, based upon the initial application by Hall.

-4-

identified Letcher County as the employer and identified KEMI as the school's insurer in 1990. In 2017, Hall had filed a notice of correction listing the date of injury as approximately April 18, 2014, but that date of last exposure was not determined until 2020, when the ALJ issued the second opinion and award granting benefits to Hall.

While the second round of appeals was pending, KEMI's motions to intervene and/or remand filed before this Court asserted that insurance records indicated that Encova Insurance ("Encova") insured Letcher County on the 2014 last exposure date.[4] However, KEMI's motions to intervene and partially remand were summarily denied by both this Court and the Supreme Court. In denying the motions in 2021, our Court specifically stated as follows:

> KEMI cites no authority to support its motion for a partial remand at this stage of the case directly to the ALJ. In addition, the scope of review by this Court is limited to matters that were subject to review by the Workers' Compensation Board, and any remand would be to the Workers' Compensation Board, not to the ALJ. KRS 342.290; *see also Woods v. Private Investigations & Counter-Intelligence, Inc.*, 545 S.W.3d 854, 855 (Ky. App. 2018) (stating Kentucky law does not permit a litigant to bypass the Board).

*Hall II*, No. 2020-CA-1404-WC, Order (Ky. App. Sep. 23, 2021).

---

[4] Encova was formerly known as Brickstreet Mutual Insurance Company.

After both appellate courts had affirmed the jurisdiction of the Board, but denied the motions to intervene, the matter was again remanded. KEMI then filed another motion to intervene and asked the ALJ to certify coverage. Again, KEMI explained that it did not insure Letcher County on the now final date of last exposure and asked the ALJ to certify coverage or direct the Commissioner to do so, so that the correct insurer would be required to make the payments awarded to Hall. The ALJ declined to do so, ruling that coverage could not be certified to shift liability for this matter to the appropriate carrier because the motion was untimely. The ALJ stated that KEMI had made the motion before this Court as soon as notified of the issue relative to coverage on the date of last exposure, but still found it untimely. The ALJ further held "the responsibility to ask for coverage to be certified rests with the carrier on the risk" who believes they should not be on the risk.

KEMI appealed to the Board, and Encova then filed a notice of representation and its own cross appeal before the Board. Both parties briefed the issue before the Board, and on July 19, 2024, the Board entered an opinion and order dismissing, as follows:

> Because neither KEMI nor Encova have [ever] been joined as a party to this claim, neither has standing to prosecute this appeal. Therefore, this appeal is hereby dismissed. (Opinion Dismissing Page 3)

We initially note neither KEMI nor Encova have ever been properly joined as a party to this claim. As such, neither has standing to pursue this appeal. The parties to this action are, and always have been, Hall and Letcher [County]. There is no remaining dispute of whether Hall contracted mesothelioma due to his exposure to asbestos while employed by Letcher [County]. Two trips through the appellate courts have clearly established that determination. Hall long ago reached age 70 and the payout of any income benefits has fully vested and is accruing six percent interest. (Opinion Dismissing Page 9-10)

In short, the Board's ruling on appeal differed from the ALJ, dismissing the action due to standing. In its dismissal, the Board further stated that the only remaining dispute lies between insurers and could be raised in circuit court.

KEMI does not deny it was not a party in the original proceedings, but argues that following the second decision of our Supreme Court, both KEMI and Encova had voluntarily entered their appearance and filed pleadings before the ALJ and the Board. Letcher County joins in the arguments of KEMI before this Court that the proper insurer should be held responsible for the payments owed to Hall. Encova, now an appellee, argues the Board did not err in concluding this was now a dispute between insurers to be decided in a circuit court and that the ALJ lacked authority to certify coverage at this juncture.

The issues in this claim no longer center on Hall's occupational disease claim, but rather on which insurer is responsible for payment of workers'

-7-

compensation benefits. Hall is fortunately now receiving his payments, and he is the only party to this appeal who did not file a brief and who did not object below to the motion to certify coverage.[5] Instead, we are now confronted with questions of standing, joinder, jurisdiction, laches, and preservation, to name a few.

## STANDARD OF REVIEW

"[R]egarding questions of law, this Court is bound neither by the decisions of an ALJ or the Board regarding proper interpretation of the law or its application to the facts. In either case, the standard of review is *de novo*." *Miller v. Go Hire Emp. Dev., Inc.*, 473 S.W.3d 621, 629 (Ky. App. 2015) (citation omitted). An ALJ's decision that a claim was untimely based upon interpretation of the Act is a matter of law. *Anderson v. Mountain Comprehensive Health Corp.*, 628 S.W.3d 10, 14 (Ky. 2021).

Further, resolution of this issue requires statutory interpretation. When interpreting a statute, this Court must first look to the plain language of the statute and if the language is clear, the plain meaning is presumed to be what the legislature intended. *University of Louisville v. Rothstein*, 532 S.W.3d 644, 648 (Ky. 2017) (citations omitted). As the Supreme Court held in *Hall II*, jurisdiction

---

[5] In fact, Hall asked the Board to order the appropriate party to pay the benefits, and the Board ordered Letcher County to immediately commence payment of Hall's award pending appeal.

is a procedural threshold through which all claims must pass. *Hall II*, 671 S.W.3d at 379 (citations omitted).

## ANALYSIS

We begin with the ALJ's decision and the basic statutory provisions that are relevant to the issues now before this Court. KRS 342.316(10) provides as follows:

> When an employee has an occupational disease that is covered by this chapter, the employer in whose employment he or she was last injuriously exposed to the hazard of the disease, **and the employer's insurance carrier, if any, at the time of the exposure, shall alone be liable therefor**, without right to contribution from any prior employer or insurance carrier, except as otherwise provided in this chapter.

(Emphasis added.)

This is confirmed by case law interpreting the Act as well. *See Henry Vogt Mach. Co. v. Quiggins*, 596 S.W.2d 17, 20-21 (Ky. App. 1979). There is no dispute that Hall's occupational disease becomes the responsibility of the insurer at the date of last exposure, April 2014. However, according to both KEMI's brief and Letcher County's brief, that insurer is Encova. Encova does not dispute coverage in its brief, but simply argues the other parties failed to raise the issue of coverage on the date of injury when the date was finally adjudicated. Encova further argues that to "stick" it with the bill after nearly a decade of litigation

-9-

would be unfair. However, it is the statute governing occupational disease claims that "sticks" responsibility upon the insurer on the date of last exposure.

The Act provides that "[a]ll policies insuring the payment of compensation under [the Act] shall contain a clause" that notice to the employer "shall be considered notice or knowledge . . . on the part of the insurer . . . and that the insurer shall . . . be bound by . . . [all] awards. . . rendered against the insured." KRS 342.360. Further, the Act provides that the insurer will "promptly pay . . . all benefits . . . awarded[,] . . . and that the obligation shall not be affected by any" failures in giving notice. KRS 342.365.

All of these provisions are crucial to the intent and purpose of the Act, to provide prompt coverage for our Commonwealth's injured workers. The primary purpose of the Act is to aid and compensate workers, and the statutes must be interpreted in a manner that is consistent with that purpose. *Kindred Healthcare v. Harper*, 642 S.W.3d 672, 679 (Ky. 2022). Fortunately, the Board herein did order that Hall's benefits be paid immediately after multiple prior appeals. Unfortunately, despite the clear intent of the statute to provide for coverage, the Act itself does not seem to address whose responsibility it is to notify carriers of a claim when the date of last exposure is changed from that initially identified by the claimant.

As indicated, the ALJ found the responsibility to ask for coverage certification rested with the carrier on the risk.[6]  The ALJ also found the motion to certify coverage was untimely.  Finally, the ALJ suggested that authority was limited because the relief KEMI requested had been sought and denied before both this Court and the Supreme Court.

Taking those rulings in reverse order, a quick review of all four appellate court decisions confirms that certification of coverage was never addressed or raised on appeal, except by KEMI's motions to intervene.  "It is well settled that failure to raise an issue before an administrative body precludes the assertion of that issue in an action for judicial review[.]"  *Urella v. Kentucky Bd. of Med. Licensure*, 939 S.W.2d 869, 873 (Ky. 1997) (citing *Jackson v. State Auto. Mut. Ins. Co.*, 837 S.W.2d 496, 498 (Ky. 1992); *Personnel Bd. v. Heck*, 725 S.W.2d 13, 17 (Ky. App. 1986)); *Puckett v. Cabinet for Health & Fam. Servs.*, 621 S.W.3d 402, 407 (Ky. 2021) (reaffirming *Urella*).

Yet here, the ALJ was not precluded from addressing this issue because the appellate court rulings on the motions did not address certification of coverage.  The appellate courts declined to grant intervention by a new party because that issue had not been presented below to the Board or the ALJ.  As we stated in our Order, our scope of review is limited to matters that were subject to

---

[6] In contrast, the Board dismissed the claim because the carriers were not parties.

review by the Board. Nothing precluded the ALJ from considering the request for a certificate of coverage once the appellate courts' jurisdiction was complete. This Court did not "pass on" a legal question so as to involve a law of the case ruling. *See Puckett*, 621 S.W.3d at 409. Neither did the Supreme Court, as it noted the only issue before it was one of jurisdiction of the Workers' Compensation Board versus the Board of Claims. *Hall II*, 671 S.W.3d at 379.

The ALJ further concluded that KEMI's motion was untimely, yet there is nothing in the statute that creates a timeline for certification. In fact, both KEMI and Encova agree there is no authority in KRS Chapter 342 or in the regulations that dictates when a motion to certify coverage is timely or untimely. The ALJ did not refer to any authority in finding the motion untimely. As the Supreme Court held in *Anderson*, "[t]he dispositive issue, in this case, is not a question of fact, but a matter of law, the ALJ's misapplication of [the Act]." *Anderson*, 628 S.W.3d at 14. "The ALJ dismissed [KEMI's motion] as untimely," and, in the absence of any authority for the ALJ's decision, we conclude that a motion to certify coverage and join the proper insurer filed within 30 days of the finality of the Supreme Court's decision appears timely. *Id.*

In so holding, we look to the regulations and note that even as to joinder, motions need only be brought as soon as practicable. 803 Kentucky Administrative Regulation ("KAR") 25:010, Section 2, subsection 3 provides:

-12-

(a) All persons shall be joined as defendants against whom the ultimate right to relief pursuant to KRS Chapter 342 may exist, whether jointly, severally, or in the alternative. An administrative law judge shall order, *upon a proper showing*, that a party be joined or dismissed.

(b) Joinder shall be sought by motion *as soon as practicable* after legal grounds for joinder are known. Notice of joinder and a copy of the claim file shall be served in the manner ordered by the administrative law judge.

(Emphasis added.)

In *JSE, Inc. v. Ahart*, we held "that the ALJ acted within his discretion" in granting a motion to join a party more than two years after the date of the work-related injury. 667 S.W.3d 60, 72 (Ky. App. 2020). The case, and the issue as to who was the employer in that case, was held to be complex. *Id.* at 73. Here, our rules of appellate procedure limited what actions could be taken below while the appeals were pending. "[T]he filing of a notice of appeal divests [a] trial court of jurisdiction to rule on any issues while the appeal is pending." *Young v. Richardson*, 267 S.W.3d 690, 695 (Ky. App. 2008) (citations omitted). Of course, those principles apply equally to an ALJ and the Board in a compensation proceeding.

Based upon our review of the timing and dates of the appellate court proceedings, we agree with KEMI that the first opportunity to seek certification of coverage before the ALJ may have been on remand after finality was issued by the

-13-

Supreme Court. Arguably, when Hall amended his application and asserted a revised date, *someone* should have been alerted to the issue of the proper insurer, but neither the statute nor the regulations place that obligation upon the insurer identified by Hall. 803 KAR 25:010, Section 2(3) does not require a specific party to move for joinder, and the statute appears silent as to who bears the obligation to certify the correct coverage.

The ALJ concluded that KEMI bore the responsibility to identify and join Encova. In contrast, KEMI argues the statute places the burden on either Hall, as claimant, with the filing of the application or the Commissioner under KRS 342.270(1). KEMI is correct that KRS 342.270 provides the framework for the Commissioner to certify coverage for the *initial* mechanism of a claim. Similarly, KRS 342.275(1) provides the statutory mechanisms for *initial* assignment of the claim to an ALJ. However, none of the provisions place responsibility for certification of coverage upon one insurer to another insurer. In the absence of any provision, statute, or regulation that dictates when such a motion should be filed or who is responsible for requesting that certification as to coverage, the ALJ erred in denying relief and refusing to determine the appropriate carrier.

We further note that it is in keeping with the purposes of the Act that insurers and employers are inexorably tied to each other. KRS 342.360. Jurisdiction of the insured is jurisdiction of the insurer, and an insurer is bound and

-14-

subject to all "awards, judgments, or decrees." *Id*. We, therefore, submit that while an insurer may not expressly be a party to a claim, it carries and maintains the same interests as the named employer, and consequently, maintains the same rights, duties, and obligations. The coverage of employers in Kentucky through an insurance policy is tantamount to accomplishing the underlying purpose of the Act; it provides the guarantee of payment of benefits to an injured worker. We submit that, as such, coverage questions are properly and necessarily justiciable by an ALJ. *See generally Kentucky Uninsured Employers' Fund v. Hoskins*, 449 S.W.3d 753 (Ky. 2014); *see also Uninsured Employers' Fund v. Hoskins*, No. 2015-SC-000657-WC, 2017 WL 6380219 (Ky. Dec. 14, 2017) (not to be published) (both addressing whether a claimant was covered under an insurance policy). Whether Hall should have certified coverage upon his amendment, or whether the Commissioner or ALJ should have done so, is not clear from the Act or any regulation or case law that we have found. However, it is also not clear that KEMI, identified by the claimant as insurer, had any responsibility to do so.

Turning then to the Board's dismissal, we also find error in that regard. While the ALJ found the insurer had a responsibility to certify coverage, the Board dismissed the case because the insurers were not parties. However, our Courts have long held that standing exists when one has a "judicially recognizable interest in the subject matter[,]" and that interest is "present and substantial[.]"

-15-

*City of Louisville v. Stock Yards Bank & Tr.*, 843 S.W.2d 327, 328-39 (Ky. 1992) (internal quotation marks and citations omitted); *see also Windchy v. Friend*, 920 S.W.2d 57, 58 (Ky. 1996) (finding that the Special Fund had standing to contest an award of attorney fees). The Board is clearly authorized to determine whether a decision of the ALJ conforms with KRS Chapter 342, regardless of whether the insurers were actual parties to the proceeding. KRS 342.285(2) provides for the Board to review an order of the ALJ to determine whether or not:

> (a) The administrative law judge acted without or in excess of his powers;
>
> (b) The order, decision, or award was procured by fraud;
>
> (c) The order, decision, or award is not in conformity to the provisions of this chapter;
>
> (d) The order, decision, or award is clearly erroneous on the basis of the reliable, probative, and material evidence contained in the whole record; or
>
> (e) The order, decision, or award is arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

The Board concluded that the matter must be dismissed because neither Encova nor KEMI were joined as parties to the action. However, both insurers had in fact filed notices of representation before the Board. Moreover, "an insurance carrier may be made a party" to the workers' compensation proceeding, and the ALJ retains "jurisdiction to decide questions [concerning] the insurer's

obligation to pay workers' compensation benefits on behalf of its insured."

*Custard Ins. Adjusters, Inc. v. Aldridge*, 57 S.W.3d 284, 287 (Ky. 2001).

Indeed, there is case law suggesting that a circuit court would have no jurisdiction over these matters if the parties were to attempt a separate civil action. *See Kentucky Employers' Mutual Ins. Authority v. Casada*, No. 2002-SC-0196-MR, 2003 WL 21258891, at *2 (Ky. May 22, 2003) (not to be published). We also note, as we did in our prior appeal of this case, that a Letcher County trial court had previously dismissed Hall's civil suit, reasoning that it was work-related and his exclusive remedy was to file a workers' compensation claim. *See Hall II*, 671 S.W.3d at 379.

The Board in its opinion, referring to *Custard Insurance Adjusters, Inc. v. Aldridge*, concluded that this case was now simply a dispute between two insurers and not a matter for the ALJ or Board to determine. We do not agree with this interpretation of *Aldridge* or that this dispute turns solely on the interpretation of insurance contracts or the terms of the contractual relationship between the carrier(s) and the employer. *Id.* The questions presented herein are governed by the provisions of KRS Chapter 342, not by the policy of insurance so as to require a separate cause of action in a circuit court.

*Aldridge* specifically held that several provisions of the Act allow an insurance carrier to be made a party to the proceedings. 57 S.W.3d at 287. As in

-17-

*Aldridge*, the factfinder has jurisdiction to decide questions affecting the insurer's obligation to pay workers' compensation benefits on behalf of its insured. *See id.* Furthermore, having been made a party, an insurer may question whether or not it had issued "a valid, outstanding policy" that covered the employer at the time of the worker's injury. *Lawrence Coal Co. v. Boggs*, 218 S.W.2d 670, 671-72 (Ky. 1949).

As in *Aldridge*, the heart of this dispute is the scope of the subject matter jurisdiction of the Board. This is not the situation found in *Wolfe v. Fidelity & Casualty Insurance Company of New York* where an insurer was alleged to have failed in its duty to defend an employer. *See generally* 979 S.W.2d 118 (Ky. App. 1998). There, the scope of the contractual duties was governed by the policy, not by the provisions of KRS Chapter 342. *Id.* Here, KEMI has defended Letcher County throughout, and Letcher County joins KEMI in asking this Court to remand the matter to determine whether Encova's policy covered the date of last exposure of Hall.

KRS 342.325 provides that "[a]ll questions arising under this chapter, if not settled by agreement of the parties interested therein . . . shall be determined by the [ALJ] except as otherwise provided in this chapter." The Court in *Aldridge* noted the number of provisions within Chapter 342 that address the relationships

between employers, their insurance carriers, and injured workers, and several of them are relevant to a consideration of the matter at issue, including:

> [1.] KRS 342.340 – requires that every employer must either insure or otherwise secure the payment of its workers' compensation liability.
>
> [2.] KRS 342.360 – charges the insurer with the employer's notice or knowledge of the injury; provides that "jurisdiction of the insured for the purpose of this chapter shall be jurisdiction of the insurer;" and provides that "the insurer shall in all things be bound by and subject to the awards, judgments or decrees entered against the insured."
>
> [3.] KRS 342.365 – requires workers' compensation insurance policies to contain an agreement by the insurer to promptly pay all benefits to those workers who are entitled to receive them and also provides that the agreement is to be construed as a direct promise between the insurer and the injured worker and that it is enforceable by the worker.

*Aldridge*, 57 S.W.3d at 287. Under all of the above provisions, the insurance carrier then becomes necessarily an interested party to any decision or award made by the Board. *Lawrence Coal Co.*, 218 S.W.2d at 672.[7]

The Board abandoned its duty to mandate coverage and bind the proper insurer by finding that it could not address these issues because the carriers "were not parties." That decision permits an insurer of compensation benefits to

---

[7] We also note that Encova actually agreed below that joinder was still permissible, and indeed it sought to join in the appeal to the Board.

refuse to fulfill its obligations under the Act which we find inconsistent with the intent and purpose of the Act. We therefore reverse the Board's finding in that regard and instruct the Board to remand the matter to the ALJ for fact finding, *i.e.*, for a determination of the proper carrier responsible for this loss.

Finally, although the Board dismissed the matter due to the carriers' failure to join as parties, it also addressed laches. We likewise address that to simply say that what comprises unreasonable delay is dependent upon the facts of a particular case. *See Plaza Condominium Ass'n, Inc. v. Wellington Corp.*, 920 S.W.2d 51, 54 (Ky. 1996) (citation omitted). Here, the Board reiterated that KEMI never moved to be joined as a party after the orders issued by the appellate courts, nor did it move to join Encova as a party. However, it did move to obtain certification of coverage for its "insured" employer, Letcher County. Hall did not object to that motion, and Encova similarly sought to intervene as a party to address that motion. Generally, the doctrine of laches provides claims may be barred in such circumstances where a party engages in unreasonable delay, to the detriment or prejudice of another, rendering it inequitable to allow that party to reverse a previous course of action. Here, the request for certification did not result in injury, damages, or prejudice to Hall. Indeed, it would prolong the process for Hall and his employer to require the parties to institute an action in circuit court. The Board's original opinion held that Hall was entitled to

immediate payments from his employer and to medical benefits from the "defendant and/or its insurance carrier." Determination of the responsible carrier is imperative and, as the Board's opinion noted, "the compensability of certain medical bills still remains for adjudication by the ALJ." It makes no sense to have these fights on two separate fronts when the issues arise from the provisions of the Act. In *Motorists Mutual Insurance Company v. Terry*, 536 S.W.2d 472, 473 (Ky. 1976), the Kentucky high Court held that the Board's jurisdiction over the issue of policy coverage at the time of injury conforms with the intent to benefit the workers "who often do not have the financial means . . . to fight on two fronts[.]" *Id.* at 473-74.

## CONCLUSION

In *Zurich American Insurance Company v. Journey Operating, LLC*, 323 S.W.3d 696, 701 (Ky. 2010), the Kentucky Supreme Court held that the Act grants an ALJ the authority to decide insurance coverage issues that affect the benefits received by the claimant. The ALJ has the authority to decide whether an employer's workers' compensation carrier covered the employer at the time of the employee's injury. *See id.* Just as the Board can determine "whether an employment relationship existed between the claimant and the alleged employer, so also may it determine an insurance company's rights in a compensation proceeding." *Terry*, 536 S.W.2d at 473.

For all the foregoing reasons, and in keeping with the exclusive remedy provisions and intent of the Act, we again REVERSE the decision of the Board and instruct the Board to REMAND the matter to the ALJ for a determination of the insurer on the risk on the date of last exposure to Hall.

ALL CONCUR.

BRIEF FOR APPELLANT:

James G. Fogle
Louisville, Kentucky

BRIEF FOR APPELLEE ENCOVA
MUTUAL INSURANCE GROUP
(FORMERLY BRICKSTREET
MUTUAL INSURANCE
COMPANY):

Ronald J. Pohl
R. Tyler Hurst
Huntington, West Virginia

BRIEF FOR APPELLEE LETCHER
COUNTY BOARD OF
EDUCATION:

W. Barry Lewis
Hazard, Kentucky